**Rachel L. FENNELL, Plaintiff, Appellant,**

**v.**

**FIRST STEP DESIGNS, LTD, d/b/a Hand-In-Hand, Defendant, Appellee.**

**No. 95-2294.**

United States Court of Appeals, First Circuit.

Heard March 4, 1996.

Decided May 15, 1996.

Roy T. Pierce with whom Alfred C. Frawley and Brann & Isaacson, Lewiston, ME, were on brief for appellant.

Peter Bennett with whom Frederick B. Finberg and Bennett and Associates, P.A., Portland, ME, were on brief, for appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Rachel L. Fennell sued her former employer, First Step Designs, Ltd. ("First Step"), under Title VII and related state laws, claiming that she was terminated in retaliation for making allegations of sexual harassment. First Step moved for summary judgment, presenting evidence that the decision to lay off Fennell had been made prior to her complaint. The district court granted summary judgment for First Step, after denying Fennell's motion for further discovery under Fed.R.Civ.P. 56(f). Fennell had hoped that further discovery would uncover proof in First Step's computer files that a memo about planned layoffs, dated prior to her report of harassment, had been fabricated. Fennell appeals both rulings. We affirm.

## I.

## *Background*

### A. *Factual Background: Fennell's Retaliation Claim*

First Step, a designer, manufacturer, and distributor of play equipment for children, operates a warehouse and customer service center in Oxford, Maine. Fennell worked as a Warehouse Lead, a supervisory position in which she directed the warehouse staff in fulfilling orders. Although Fennell was a supervisor and shared office space with the Warehouse Manager, she spent most of her time on the warehouse floor working alongside the other warehouse workers. Her immediate supervisor was Wayne Smith, the Warehouse Manager. Kathleen Tucker, General Manager of the warehouse, was Smith's supervisor.

#### 1. *Fennell's Report of Harassment and Her Subsequent Layoff*

Two First Step employees had complained to Fennell about on-the-job sexual remarks by Smith, and Fennell had heard from other employees about a sexually offensive remark Smith had made while performing as a country musician at a company-sponsored benefit dance. On November 19, 1993, Fennell met with Tucker and recounted what she had heard about Smith's inappropriate remarks. According to Fennell, Tucker was hostile. Smith's immediate predecessor had been fired in May of 1993 for sexual harassment, and Tucker was incredulous to hear that First Step might have another harasser as Warehouse Manager.

On December 20, 1993, Fennell was laid off,[1] and she believes her layoff was in retaliation for her complaints to Tucker. Fennell also alleges that, after her report to Tucker, she was given inferior work (regular packing duties rather than supervisory duties). First

1. Fennell asserts that she was terminated, while First Step maintains she was only laid off. We address this dispute in Part II.B.3, our discussion of the grant of summary judgment.

Step maintains that Fennell's layoff was planned before she complained to Tucker about Smith, and that her complaint was not a factor in its decision to lay her off.

*2. The October 25 Memo*

A memorandum dated October 25, 1993, from Tucker to Eric Schultz, First Step's Boston-based Chief Operating Officer, indicated that Fennell was scheduled for a layoff the week before Christmas.[2] The memo, titled "SUBJECT: ANTICIPATED LAYOFFS/STAFFING," listed twenty-eight persons and their continuing positions in the warehouse; it also listed Fennell and four others under the subtitle "SCHEDULED LAYOFFS WEEK OF CHRISTMAS." According to the affidavits of Tucker and Schultz, the memorandum was a response to pressure from Schultz to reduce operating costs at the warehouse. Tucker and Schultz both state in their affidavits that the memorandum was faxed to Schultz on October 25, and the document bears a hand stamp indicating that it was faxed that day. Brigitte Marston, a customer service supervisor also reporting to Tucker, states in her affidavit that she saw a "layoff list" with Fennell's name on it before Fennell's November 19 meeting with Tucker. (Marston also attended that meeting, at Fennell's request.) On November 5, 1993, Marston sent an internal electronic mail message ("E-mail") to another employee, in which she referred to the layoff list. Marston implied in the E-mail that she had seen the list and knew who was on it.

Fennell contends that the memorandum was fabricated *after* the November 19 meeting. To support this contention, she points to five facts that, she argues, are suggestive of fabrication: (1) one of the employees that Tucker listed for an ongoing position in the October 25 memorandum had already left the company late that summer, before the memo was created; (2) Tucker stated that she had sent other memoranda regarding earlier layoffs to Schultz, but neither she nor Schultz kept copies of them (only the October 25 memo was retained); (3) Tucker commented to Fennell earlier in October 1995 that she was doing a good job, that her services were needed, and that she would not be required to cross-train as a telemarketer; (4) First Step employees had inconsistently described the job action taken with respect to Fennell (sometimes as a layoff, other times as an elimination of her position) as well as the precise reasons for the action; and (5) certain other employees listed in the memorandum for layoff were ultimately not laid off. For ease of reference, we shall refer to these as "the five suspicious facts."

*B. Prior Proceedings*

On January 23, 1995, Fennell filed a three-count complaint in federal district court alleging that First Step fired her in retaliation for her report of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), the Maine Human Rights Act, Me.Rev.Stat. Ann. tit. 5, § 4572(1)(E), and the Maine Whistleblower's Protection Act, Me.Rev.Stat. Ann. tit. 26, § 833(1)(A). On August 4, 1995, after the close of discovery, First Step moved for summary judgment on all three counts, arguing primarily that Fennell's layoff was planned before she lodged her sexual harassment complaint, and thus was not retaliatory. First Step asserted that there was no genuine issue as to the fact that the layoff decision predated Fennell's complaint, because the October 25 memo and the corroborating testimony of three First Step managers was essentially uncontroverted. On August 25, 1995, Fennell opposed the motion, arguing that there was a genuine issue of material fact as to whether the October 25 memo was actually written before she complained to Tucker or whether it was, instead, fabricated to exonerate First Step. In her opposition to summary judgment, Fennell requested additional time for discovery under Fed.R.Civ.P. 56(f) to determine, based on the computer word processing file, when the memo was written. On August 28, 1995, First Step responded by providing a diskette containing a copy of the word processing file of the

2. Copies of the memorandum have been made part of the summary judgment record as exhibits to the affidavits of Tucker and Schultz.

October 25 memo. On September 9, 1995, First Step submitted a reply brief and an objection to Fennell's request for more discovery time, supported by an affidavit averring that there was no way to determine from its computer system when the document was first created.

The district court determined that, in light of the October 25 memo, Fennell had not shown evidence sufficient to allow a reasonable jury to find that her layoff was in retaliation for her complaints about sexual harassment, and it granted "conditional" summary judgment in favor of First Step. The condition was that Fennell would have, under Rule 56(f), "seven (7) days in which to file any affidavit revealing competent testimony, based on the magnetic medium [i.e. the diskette containing the word processing file], that the memorandum was created or modified (as opposed to being simply called up) on or after November 19, 1993." [3]

Pursuant to the district court's order allowing limited further discovery, Fennell submitted the affidavit of her computer expert stating that the computer word processing file containing the October 25 memo on a magnetic diskette revealed that the document was "autodated" [4] on August 7, 1995. Fennell's expert proposed that the original date of creation or date of any earlier modification could be determined by a review of the file as it resided on First Step's hard drive, rather than the diskette that had been provided by First Step.

The district court held a hearing on Fennell's request for discovery of First Step's hard drive and then directed the parties to submit a "protocol" under which Fennell would have access to First Step's hard drive. If no joint protocol could be agreed upon, differences were to be resolved by conference. Subsequently, the parties submitted substantially different protocols.

After reviewing the protocols, and without holding another conference, the district court decided that its earlier decision to consider further discovery had been ill-advised. Accordingly, the court denied any further Rule 56(f) discovery, and granted First Step summary judgment. This appeal ensued.

## *II.*

## *Discussion*

Fennell appeals the district court's grant of summary judgment in favor of First Step, as well as its denial of her request for additional discovery of First Step's computer files in the hope that she might find evidence that the October 25 memo was fabricated after the fact. Because summary judgment would have been inappropriate if Fennell had presented evidence that the memo was a perjurious fabrication, we will address the discovery issue first.

### A. *Denial of Rule 56(f) Discovery*

We review a district court's ruling on a discovery request under Fed.R.Civ.P. 56(f) for abuse of discretion. *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential

3. There is no dispute that the October 25, 1993, memo, listing Fennell among those to be laid off, existed in May 1994, when it was submitted by First Step as part of the Maine Human Rights Commission fact finding process. Thus, if the document was fabricated as Fennell maintains, the fabrication occurred sometime after November 19, 1993, and before May 1994.

4. Fennell's expert actually stated that the memo was "modified" on August 7, 1995. However, the expert did not suggest that there were any *textual* changes to the memo on that date. Rather, the expert referred to the automatic modification of the date assigned to the document file by the word processing program after certain commands have been entered. For example, the expert stated, "if a file is 'called-up' to an application such as Wordperfect, and saved to a different location (whether changed or not), the date of saving is shown as the modification date." In an attempt to achieve some clarity, we shall refer to such a change to the date of a computer file not as a "modification," but as "autodating." We consider "modification," as that term was used by the district court, to mean a change in the text of the document that would appear on a paper printout of the document, as opposed to changes to the date assigned to the computer file containing the document text.

to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

To receive the benefit of Rule 56(f), the "movant must (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trial worthy issue, and (2) 'demonstrate good cause for failure to have conducted the discovery earlier.'" *Price,* 931 F.2d at 164 (quoting *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 988 (1st Cir.1988)). Although the district court did not use these precise words, it denied any further Rule 56(f) discovery essentially because Fennell did not articulate a plausible basis for the belief that discoverable materials existed which would have raised a trial worthy issue. For purposes of our analysis, we will assume, but need not decide, that Fennell met the "good cause" element.

Fennell argues that the district court should have allowed Rule 56(f) discovery of First Step's hard drive because her expert established that the October 25 memo was "autodated" on August 7, 1995. Fennell argues that regardless of whether the autodating was intentional or inadvertent, it obscured the date of the document's last prior modification or, if there was no prior modification, the date of its creation, thus rendering those dates uncertain. Fennell maintains that First Step must "live with that uncertainty," by which she means that there is a genuine dispute as to the date on which the memo was written. Fennell emphasizes that First Step's summary judgment motion is based in large part on the memo, as proof that the business decision to lay off Fennell predated her report of sexual harassment. Fennell also points to the "five suspicious facts" noted earlier as support for her contention that there is a plausible basis for her belief that further discovery will yield evidence that the memo was fabricated. We begin our analysis with a review of the discovery-related proceedings below.

We note at the outset that First Step did not file its motion for summary judgment until after the close of discovery pursuant to the district court's pretrial order. Fennell's original discovery request did not make clear whether it called for a diskette copy of the memo or a paper "original." In any event, there is no indication and no allegation that First Step withheld the diskette from Fennell in bad faith.

Despite the district court's determination that Fennell's opposition to summary judgment had not demonstrated any genuine dispute as to First Step's contention that its decision to lay off Fennell preceded her complaint, the court granted a seven-day extension to allow Fennell to file an affidavit providing some computer-based evidence that the memo was fabricated and antedated. By this time, a diskette containing the memo's computer file was already in Fennell's hands, thus the proposed extension did not involve any intrusion or impose costs upon First Step.

In compliance with the discovery extension, Fennell submitted the affidavit of her computer expert, which stated that analysis of the diskette containing the word processing file of the October 25 memo revealed that the document was "autodated" on August 7, 1995. The district court determined that the computer expert's affidavit did not reveal that the memorandum was "created or modified (as opposed to being simply called up) on or after November 19, 1993." In other words, the affidavit was not probative of any fabrication.

Fennell's expert proposed that the original date of creation or date of last textual modification could be determined by review of the file as it resided on First Step's hard drive. On the other hand, a First Step employee had stated, in an affidavit previously filed in reply to Fennell's opposition to summary judgment, that First Step's computer consultant determined that its system could not reveal the date on which the document was first created or last textually modified.

The district court held a conference after Fennell filed her computer expert's affidavit. After considering Fennell's proposal that access to First Step's hard drive might reveal the date of creation or modification of the October 25 memo, the district court directed

the parties to submit a "protocol" establishing the procedures by which Fennell would have access to relevant materials on First Step's hard drive. The district court cautioned that discovery would be allowed only if the protocol ensured that hard drive access would have a "minimal degree of intrusion time-wise and interference-wise" with First Step's operations, and if it provided "adequate assurances of confidentiality."

Fennell provided a protocol requiring a specialist to "mirror" First Step's entire hard drive, and take the mirror copy to its facility in Canada for complete analysis and ultimate erasure.[5] First Step objected to Fennell's protocol and provided its own protocol.[6]

After reviewing the two protocols and apparently recognizing that the parties were unlikely to reach consensus, the district court concluded that its earlier decision to permit additional discovery had been "ill-advised" because it would involve "a 'fishing expedition' without any particularized likelihood of discovering appropriate information," while, "[a]t the same time, the process involves substantial risks and costs." To inform our judgment whether the denial of further discovery was an abuse of the district court's discretion, we first address the district court's conclusion that the "risks and costs" were substantial, and then its conclusion that the proposed discovery was a "fishing expedition."

### 1. *Risks and Costs*

A party seeking discovery under Rule 56(f) must "articulate a plausible basis for the belief that *discoverable* materials exist which would raise a trial worthy issue." *Price,* 931 F.2d at 164 (emphasis added). In determining whether material is "discoverable," the court should consider not only whether the material actually exists, but the burdens and expenses entailed in obtaining the material. *See* Fed.R.Civ.P. 26(b)(2).[7] Discovery matters are for the informed discretion of the district court, and the breadth of that discretion in managing pre-trial mechanics and discovery is very great. *Fusco v. General Motors Corp.,* 11 F.3d 259, 267 (1st Cir.1993). In exercising this broad discretion, the district court in this case balanced the costs, burdens, and delays that the proposed discovery entailed, as well as the likelihood of discovering evidence of fabrication, against the obvious importance of the evidence sought. *See Resolution Trust v. North Bridge Assoc.,* 22 F.3d 1198, 1203 (1st Cir.1994) (party seeking Rule 56(f) discovery "should set forth a plausible basis for believing that specified facts, *susceptible of collection within a reasonable time frame,* probably exist")(emphasis added).

The district court recognized First Step's concerns over Fennell's insufficiently detailed description of the proposed analysis of the

5. Fennell's protocol proposed, in sum: (1) a conference call between the parties and their computer representatives to discuss the computer system configuration; (2) an on-site visit at First Step's warehouse where counsel would observe Fennell's computer representative create a "mirror" of the target hard drive; (3) an off-site analysis of the mirror hard drive by a specialty laboratory, whereby the technicians would attempt to determine the creation date or modification date of the relevant files; (4) the erasure or destruction of the mirror hard drive, certified by affidavit; and (5) a protective order stipulating, in sum, that all information on the mirror hard drive not relating to the creation, modification, or erasure, of the relevant files is confidential.

6. First Step objected to Fennell's protocol because, *inter alia,* it: (1) failed to describe the methodology by which the technicians would attempt to determine the creation or modification dates (First Step noted that its computer system contains many hard drives, and expressed concerns over business risks resulting from accidental data loss, incompatible hardware, and system downtime); (2) did not adequately address attorney-client privilege and work product concerns as to other documents on the hard drive; and (3) allowed unsupervised possession of the mirror drive. The district court described the detailed protocol that First Step proposed as "extremely cumbersome and expensive."

7. Fed.R.Civ.P. 26(b)(2) provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules ... shall be limited by the court if it determines that: ... (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

hard drive,[8] as well as the confidentiality of information on the hard drive that was proprietary or subject to attorney-client privilege or work-product privilege. The district court also recognized that resolving the discovery dispute, and the discovery process itself, would increase legal and expert fees. The protocols alerted the district court to genuine problems surrounding the proposed discovery of First Step's hard drive. In exercising its discretion, the district court reasonably concluded that the discovery process would involve substantial risks and costs. *See id.*

*2. A Fishing Expedition?*

The district court determined not only that the risks and costs of further discovery were substantial, but also that Fennell had not demonstrated "a particularized likelihood of discovering appropriate information." We agree. In our view, Fennell did not sufficiently "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist." *Id.* (party seeking discovery must show that it will not be an "exercise in futility").

As to "susceptibility of collection," all Fennell was able to say was that "there may be a way." Fennell submitted the affidavit of her expert, proposing that the original date of creation or date of any earlier modification of the October 25 memo could be determined by a review of the memo file as it resided on First Step's hard drive, rather than on the diskette originally provided by First Step. First Step submitted a reply to Fennell's expert affidavit, which argued that Fennell's expert's statements were conclusory, without foundation, and that Fennell's speculation and conjecture did not warrant additional discovery. The district court then held a hearing on the discovery issue, at which the following was stated:

> [The Court:] It's my understanding that based upon telephone communications as recently as today, that [Fennell] is informed by the [computer experts who were to analyze the mirrored hard drive] that they cannot reach a conclusion from the disk that has been provided, but instead, that the only way they can reach any kind of conclusion is by access to the hard drive on [First Step's] premises. That at this time, they cannot guarantee that there they can reach a conclusive result, but that it's their position there may be a way. Is that essentially correct?
>
> [Counsel for Fennell:] That's correct, Your Honor.

The lack of detail in Fennell's protocol cast even more doubt on the soundness of the technical basis for the discovery venture. The district court had good reason to be skeptical, based on Fennell's inadequate showing that the proposed analysis could determine the memo's creation date.

As to whether "specified facts ... probably exist," Fennell presented precious little that suggested that fabrication had occurred. The "autodating" that occurred on August 7, 1995, could not have indicated that the document was fabricated on that day, as it had been submitted more than a year earlier in the state proceedings. The "autodating" could indicate an intentional conspiracy to cover up the document's fabrication by obliterating the actual creation date, but that is mere speculation.

The "five suspicious facts," enumerated earlier, are equally speculative. We fail to see how the inclusion of an employee who had already left the company on the list of employees to be retained makes fabrication more likely. Fennell argues that the mistake indicates that the memo was prepared at a later point in time, when Tucker's memory of who was employed would have faded. That inference is, at best, extremely attenuated.

The fact that the October 25 memo was retained while other similar memos are no longer extant is also virtually non-probative. It would be natural for an employer to take

8. First Step argued that Fennell's failure to disclose the specific technical steps to be taken in the analysis of the mirrored drive rendered her protocol nothing more than a proposal for a fishing expedition. First Step also argued that the unknown mirroring process and analysis of its system might temporarily or permanently affect their computer system and business operations.

care to retain a memo pertaining to an employee, soon to be laid off, who had lodged a sexual harassment complaint. Moreover, Fennell filed a state human rights charge within ninety days of her complaint, thus the desirability of saving any documents relating to her termination became obvious soon after the memo was written. Nothing in the record suggests any similar reasons for saving the earlier memos.

The fact that Tucker had made positive comments about Fennell's performance and job security and First Step's future shortly before she was placed on the layoff list is not necessarily probative of fabrication, either. First Step does not assert that Fennell was let go for poor performance, but rather that her termination was part of a reorganization dictated by financial concerns unrelated to her performance. The need for her services until the end of the Christmas rush could have been one reason Tucker spoke as she did.

Fennell claims that First Step managers inconsistently described the nature of and the reasons for the job action, but our review of all the statements shows no sinister inconsistency. It appears that the term "layoff" was used loosely, and was not necessarily indicative of a temporary, rather than a permanent, action. And the various statements about why she was let go, while worded in different ways, all relate to First Step's business objective of improving the economic efficiency of its warehouse operation. We see nothing out-of-the-ordinary or suspicious about the statements.

Finally, the fact that some employees slated for layoff in the memo were ultimately not laid off might say something about the finality of the layoff list as a general matter, but we fail to see how it suggests fabrication. It is true that only two of the five individuals slated for Christmas week layoffs were actually laid off as scheduled, but the record indicates non-suspicious reasons for the changes in First Step's plans. Two of the three who survived the axe stayed on in telemarketing because two other telemarketers requested layoffs. The other employee was out with an injury collecting worker's compensation during Christmas week; at the urging of First Step's insurer, she was called back to light duty after the New Year and then laid off shortly thereafter. And, even ignoring the apparently legitimate reasons why some of the slated layoffs did not occur, the changes in First Step's staffing plans do not suggest fabrication. Why would a fabricated layoff list be more likely to name employees eventually retained than a real layoff list? Wouldn't a fabricated list, written after the fact, have the benefit of hindsight and thus be *more* accurate? We see little probative value in this, or any of the other "five suspicious facts."

*3. Conclusion: No Abuse of Discretion*

Even if we were inclined to disagree with the district court's assessment of Fennell's arguments, which we are not, we reverse a district court's discovery ruling only for abuse of discretion. While there may be cases where discovery of word processing files on a computer hard drive might well be warranted, Fennell has not met her burden of demonstrating that the district court abused its discretion in denying that opportunity here. Thus, we hold that the district court acted within its discretion in disallowing further Rule 56(f) discovery, given its conclusions, supported by the record, that (1) the discovery would entail substantial risks and costs, and (2) there was little particularized basis to believe that any evidence of fabrication could be discovered by Fennell's experts.

*B. Grant of Summary Judgment for the Defendant First Step*

*1. Standard of Review*

We review a grant of summary judgment *de novo,* and like the district court, we are obliged to view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Moreover, summary judgment may be appropriate '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Finally, Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### 2. *Retaliatory Discharge: The Legal Framework*

Although Fennell has framed her retaliatory discharge claims in one federal count and two state law counts, the parties agree that the well-established analytical framework used in Title VII retaliation claims applies to the state law counts as well. Thus, for purposes of this appeal, we treat all three counts as subsumed in the Title VII count.

Where, as in this case and in retaliation cases generally, there is no direct evidence of the defendant's retaliatory animus, the *McDonnell Douglas* burden-shifting framework is used to allocate and order the burdens of producing evidence. *See Mesnick*, 950 F.2d at 827 (explaining the interplay between the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and the standards for summary judgment). To establish a prima facie case of retaliation, Fennell must show that: (1) she engaged in protected conduct under Title VII (or here, Maine's Human Rights Act or Whistleblower's Protection Act); (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *See, e.g., Hoeppner v. Crotched Mountain Rehabilitation Ctr.*, 31 F.3d 9, 14 (1st Cir.1994).

Once a prima facie showing has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *See, e.g., Mesnick*, 950 F.2d at 827.[9] If the defendant does so, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Mesnick*, 950 F.2d at 827–28. On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus. *Id.* at 827.

### 3. *Application to Fennell's Case*

Although First Step refutes that Fennell has even made out a prima facie case of retaliation, the district court apparently assumed that she did. The plaintiff's prima facie burden is not onerous, and we find that she met that burden by demonstrating, among other things, that her termination occurred shortly after her protected conduct, the report of harassment. *See Oliver v. Di-*

9. *Mesnick* dealt with a claim of retaliation for conduct protected by the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621–634. The analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases, and our precedents are largely interchangeable. *See, e.g., Hazel v. U.S. Postmaster General*, 7 F.3d 1, 3–4 (1st Cir.1993) (applying *McDonnell Douglas* framework and a unified retaliation analysis to claims under both the ADEA and Title VII).

*gital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988) (discharge soon after protected conduct is strongly suggestive of retaliation).

Fennell cannot seriously dispute that First Step met its burden of *articulating* a legitimate, non-retaliatory reason for her discharge: that economic and business reasons led First Step to decide to lay her off, and that the decision was made prior to her complaint. Thus, we arrive at the dispositive question: whether Fennell has, on the summary judgment record, established genuine issues of fact that (1) First Step's business reasons were a pretext and (2) her discharge was in retaliation for her reports of sexual harassment.

The district court granted summary judgment because it held that Fennell had not shown a genuine issue as to the fact that First Step decided to discharge her before she made the report of sexual harassment. The linchpin of the district court's holding was the October 25 memo, listing Fennell among those to be laid off. Fennell asserts that the memo was fabricated some time after her report of harassment. We discussed Fennell's assertions of fabrication in analyzing the discovery issue, and we found them to be unpersuasive. For the reasons stated in that analysis, we hold that Fennell has not presented evidence that would allow a reasonable jury to find that the memorandum was fabricated. At bottom, Fennell's fabrication claims amount to no more than "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz*, 896 F.2d at 8.

In addition to the memo, First Step also provided the uncontroverted affidavits of three employees who swear that Fennell was on a list of employees to be laid off, and they saw the list before she lodged her complaint of harassment. Given the memo and the three affidavits, we conclude that Fennell has failed to demonstrate a genuine issue as to whether First Step's layoff decision predated her complaint. Thus, no reasonable jury could find that First Step's business-related, non-retaliatory reason for Fennell's layoff decision was a pretext—it cannot have retaliated for conduct that had yet to occur.

Fennell also argues that even if the memo was legitimate and predated her report, the job action contemplated in the memo was vague and not final, and that retaliatory animus motivated her ultimate termination. We are not persuaded. The October 25 memo used the term "layoff," and Smith used the same term in his December 20, 1993, letter informing Fennell of her discharge. The next day, Tucker wrote Fennell a letter stating that her position had been eliminated. Fennell argues that the October 25 memo contemplated a "layoff," from which she would be called back when work was available, but that in fact she was terminated and her position eliminated. First Step counters that she was laid off because her position was eliminated, and that it would have brought Fennell back from layoff if another supervisory position opened for which she was qualified. First Step states that it did not transfer Fennell to a non-supervisory position because it does not generally demote supervisors to line positions, believing that morale problems result. Our view of the summary judgment record, viewed favorably to Fennell, leads to the inescapable conclusion that the pre-complaint decision to "lay off" Fennell was a decision to eliminate her position, rather than a temporary measure with the expectation that she would be called back. After reviewing the entire record, we hold that Fennell has not presented evidence that would allow a reasonable jury to find that First Step had originally decided merely to "lay off" Fennell but then later decided to take a more permanent action in retaliation for her complaint.

We also reject Fennell's argument that the pre-complaint decision to lay her off was not a final decision, and that it could have been reconsidered later, but was not because of her complaint. We agree with the district court that "could have" is not enough. Fennell has presented no evidence that there was later reconsideration or that the decision was not final. We recognize that certain other employees on the layoff list were ultimately not laid off because of changed circumstances relevant to their jobs, but that fact standing alone says little or nothing about any changes in circumstance that

might have led to reconsideration of Fennell's job future.

Fennell makes one other argument worthy of mention. She claims that after her complaint of sexual harassment she was "immediately demoted to a lesser position." She does not, however, develop this argument in her brief, and we are not clear whether she raises it as a separately actionable act of retaliation or as evidence of the retaliatory animus behind her termination. In either case, we agree with the district court's rejection of her demotion argument. It is difficult to see how her assignment to packing duties during the Christmas season rush amounts to a demotion, given that in her affidavit she described her earlier duties thus: "I spent most of my time as Warehouse Lead on the warehouse floor working alongside other warehouse employees." The demotion argument has not raised any genuine issues of fact as to retaliation, and in any event the argument is waived for failure to develop it fully in her brief. *See, e.g., Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990) (explaining that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned).

Fennell points to a variety of other facts as proof that First Step could not have wanted to discharge her for legitimate business reasons. These other facts include her value as an employee, her awards for Employee of the Month and the Year, her utility in performing the annual inventory to be performed shortly after her layoff, the fact that the First Step catalogue was featured on the Oprah Winfrey show shortly before her layoff, and First Step's plans for a large mailing of catalogues in January 1994. In essence, she attempts to second-guess First Step's business judgment that a leaner warehouse management team—that is, a team without Fennell—was desirable. None of these other assertions creates a genuine issue of fact as to whether First Step's reasons for termination were a pretext, in light of the October 25 memo and the three affidavits averring that the layoff list was made before Fennell's complaint. "Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick*, 950 F.2d at 825.

In the absence of a genuine issue as to the authenticity of the October 25 memo scheduling Fennell for a layoff, Fennell is left with only conjecture and innuendo that her termination was an act of retaliation. The district court appropriately granted summary judgment for First Step.

### *III.*

### *Conclusion*

For the foregoing reasons, the judgment of the district court is *affirmed.*