OPINION
Plaintiff-appellant Scott R. Jamison appeals the February 11, 1999 Judgment Entry entered by the Delaware County Court of Common Pleas, granting summary judgment in favor of defendant-appellee American Showa, Inc. (hereinafter "ASI"), and dismissing appellant's Complaint with prejudice.
 STATEMENT OF THE FACTS AND CASE
In June, 1992, ASI, an automotive parts manufacturing company, hired appellant as a wastewater treatment and paint line team leader for its Sunbury, Ohio facility. Eventually, appellant became an assistant manager and his responsibilities expanded to include air pollution, air permits, wastewater permits, hazardous waste operations, EPA reports, and other environmental matters. Throughout appellant's employment with ASI, Don Westover served as senior manager. His responsibilities included keeping the Board of Directors abreast of the goings-on at the company. Bill Crusey was the plant manager for the Sunbury facility throughout appellant's tenure with ASI. John Zeiner oversaw the Environmental Safety and Health Department when appellant was hired and was appellant's initial supervisor. In early 1994, the Ohio Environmental Protection Agency contacted appellant and recommended he review the EPA file on ASI in order to understand the company's history of environmental compliance. Following his review of the EPA file, appellant verbally reported his findings to Junjiro Saito, the executive vice president. Thereafter, on February 17, 1994, appellant sent a confidential memorandum to Saito and Akio Kimura, the president of ASI at the time, reporting his findings. Appellant never received a response from Saito or Kimura regarding his memorandum. Appellant subsequently learned Zeiner and Westover contacted ASI's attorneys in an unsuccessful attempt to have him terminated. In June, 1995, ASI hired Scott Sindelar as maintenance manager in charge of all maintenance within the Sunbury facility. Sindelar's responsibilities included developing programs to improve ASI's maintenance capabilities and overseeing the general management of the Maintenance Department. Within six months of the commencement of his employment with ASI, Sindelar became appellant's supervisor. In a memorandum dated April 22, 1996, appellant advised Sindelar of a Notice of Violation issued by the Ohio EPA on December 15, 1995. The memorandum related the actions which had been taken in response to the Notice as well as the areas which still needed to be addressed. Appellant sent Sindelar another memorandum on April 22, 1996, which listed ASI's current noncompliance with EPA regulations. Subsequently, on August 6, 1996, appellant sent a confidential memorandum to Takeshi Kawaguchi, the current president of ASI, and to Sindelar, which outlined ASI's history of noncompliance with environmental laws, described the actions appellant had taken in an attempt to achieve environmental compliance, and reported current violations and management's lack of response thereto. Appellant did not receive a response from either Kawaguchi or Sindelar. Appellant asked Sindelar to arrange a meeting with Kawaguchi in February, 1997, however, such request was never satisfied. In another attempt to discuss the environmental noncompliance with Kawaguchi, who has difficulty with spoken English, appellant enlisted the assistance of Hiro Isoda, a Japanese engineer. Isoda found Kawaguchi uninterested in hearing about environmental issues. Because his previous attempts to persuade ASI to address the environmental problems were unsuccessful, appellant was convinced he had to directly raise the issues with Kawaguchi if such issues were ever going to be addressed by ASI. Appellant believed Kawaguchi did not understand the gravity of the situation because Westover, upon whom Kawaguchi relied for information, did not keep the president adequately informed. On March 7, 1997, appellant sent a letter to Kawaguchi regarding Westover's treatment of appellant as well as Westover's attitude toward resolving the environmental problems at ASI. Appellant concluded his letter by stating: I expect a response from management within five working days. If I do not receive a response that indicates management (sic) willingness to resolve the problems, I will assume that management is not sincere. This will leave me to resolve the issues as I see necessary.
Deposition of Scott J. Jamison, Exhibit NO. 70.
On the same day, appellant was scheduled to brief environmental issues at the CAP-1 meeting, an in-house review of department business plans and an update of the status of the departments presented for the benefit of company managers and executives. Because Kawaguchi, who was in attendance at the CAP-1 meeting, did not become president of the company until 1995, or 1996, appellant decided to take the opportunity to present Kawaguchi with a history of ASI's environmental problems and violations in order to facilitate the president's understanding of ASI's failure to address current environmental problems. Appellant detailed the laws and consequences of noncompliance with certain regulations. Although the parties dispute the exact context, appellant made a statement referring to a pattern of criminal behavior at ASI and management's disregard of and/or involvement in such behavior. As his presentation proceeded, appellant commented he was surprised nobody had been fired because of the company's noncompliance with regulations pertaining to the discharge from the wastewater plant. Michael Bowers, the plant manager of ASI's Blanchester facility, and Bill Crusey, the Sunbury plant manager, advised appellant his comments were inappropriate, but neither manager instructed appellant to discontinue his presentation. Appellant advised management, "I know who's responsible for these problems and I'm going to do something about it." Jamison Depo. Vol. II at 163. Via correspondence dated March 10, 1997, appellant advised the Administrator of Region V of the United States EPA of ASI's history of noncompliance with environmental regulations as well as its consistent, on-going pattern of violations. Thereafter, on March 14, 1997, ASI terminated appellant's employment. Westover informed appellant his termination was the result of his behaving in a manner which was unacceptable for an assistant manager. Westover refused to respond to appellant's request for specifics. The termination came two weeks after Sindelar's formal review of appellant's job performance on February 27, 1997, during which Sindelar informed appellant he performed the basic, technical functions of his job well, but needed to improve his attitude in the area of human relations. On September 8, 1997, appellant filed a Complaint in the Delaware County Court of Common Pleas, alleging his termination violates Ohio public policy; violates the Ohio Whistleblower's Act, R.C. 4113.52; and violates ASI's corporate policy of terminating employees for just cause only after progressive discipline. Via Judgment Entry dated February 11, 1999, the trial court granted ASI's motion for summary judgment and dismissed appellant's complaint. It is from this judgment entry appellant appeals, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MR. JAMISON'S CLAIM THAT HIS FIRING FOR RAISING ENVIRONMENTAL CONCERNS VIOLATES THE PUBLIC POLICY OF OHIO. [FEBRUARY 11, 1999 JUDGMENT ENTRY].
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MR. JAMISON'S CLAIM THAT HIS FIRING VIOLATES THE OHIO WHISTLEBLOWER STATUE. [FEBRUARY 11, 1999 JUDGMENT ENTRY].
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MR. JAMISON'S CLAIM THAT HE WAS FIRED IN VIOLATION OF AMERICAN SHOWA INC.'S POLICY OF ONLY TERMINATING FOR JUST CAUSE AFTER PROGRESSIVE DISCIPLINE. [FEBRUARY 11, 1999 JUDGMENT ENTRY].
Any other facts relevant to our discussion of appellant's assignments of error shall be contained therein.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states, in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280. It is based upon this standard we review appellant's assignment of error.
 II
Because our disposition of appellant's second assignment of error affects our analysis of his other assignments of error, we shall address said assignment first. In his second assignment of error, appellant argues the trial court erred in granting summary judgment in ASI's favor on his Whistleblower claim. "R.C. 4113.52, Ohio's `Whistleblower Act,' establishes guidelines by which an employee can bring to the attention of the employer or appropriate authorities illegal activities by either the employer or a co-employee without being discharged." Keefe v. Diocese of Catholic Church (1998), 121 Ohio App.3d 1, 5. (Citation omitted). R.C. 4113.52(A) provides, in pertinent part: (A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct and if the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation * * * with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
* * *
 (2) If an employee becomes aware in the course of the employee's employment of a violation of Chapter 3704., 3734., 6109., or 6111. of the Revised Code that is a criminal offense, the employee directly may notify either orally or in writing, any appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
Furthermore, R.C. 4113.52(B) mandates "no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section." "In order for an employee to be afforded protection as a `whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." Contreras v. Ferro Corp. (1995), 73 Ohio St.3d 244, syllabus. In the instant action, the trial court found appellant failed to establish he complied with the statutory requirements of R.C. 4113.52(A)(1) and failed to establish his termination was retaliatory as required by R.C. 4113.52(B). February 11, 1999 Judgment Entry at 7. The trial court concluded appellant was "not entitled to the statutory protections of R.C. 4113.52." Id. In his Complaint, appellant asserts claims for protection under R.C. 4113.52(A)(1) and (A)(2). Although the parties addressed the issue in their motions for and against summary judgment, the trial court did not analyze whether appellant was entitled to statutory protection under (A)(2). Accordingly, we shall analyze (A)(1) and (A)(2) as well as (B). Statutory Claim under R.C. 4113.52(A)(1) "R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or make a reasonable and good faith effort to correct the violation." Contreras, supra at 248. Thereafter, if the employer does not correct the violation or make a reasonable and good faith effort to correct the violation, the employee may "blow the whistle". "R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may" do so. Id. "Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged." Id. at 248-249. We must now determine whether appellant followed the specific requirements of (A)(1). With respect to the oral notice requirement, the record reveals appellant orally advised ASI of both past and current violations at the March 7, 1997 CAP-1 meeting. During his deposition, appellant discussed the content of his presentation at the meeting: A.[Appellant]: * * * I went over permit status, waste water plant status, I believe. I think I reported the hazardous waste total shipments and dollars spent. * * * And then I reported some compliance issues where I was having trouble where I made it a point to point out that I was having trouble with the paint line causing loading problems on the waste water plant because it was being run over capacity.
 Q. [Attorney Jonathan Vaughn, ASI's Counsel]: That was a current problem?
 A. Yeah, this was a current problem. It was a problem most of `96 and it was still on going and the root cause of the problem was that the paint line was being run in excess of its capacity * * * causing contaminations of downstream processes which led to loading problems on the waste water plant. * * * I said also by exceeding the design rate you've exceeded what you're allowed to make by permit so you're in violation of this permit by also exceeding your design limitations. And I said, I think I mentioned that I had on-going problems with the loader base solvent degreasers, that I couldn't get the record keeping that I needed out or production. * * * The chrome plating, I was having trouble getting the recordkeeping done from the chrome plating after several requests and they just weren't getting it done so I brought that up, * * *
 Q. Let me stop you there. Are any of those current problems that you described in that meeting?
A. Those were current problems.
Jamison Deposition, Vol. II at 153-154.
Additionally, Hiro Isoda, the co-worker appellant enlisted to talk to Kawaguchi, recalled appellant addressed current problems at the CAP-1 meeting. Deposition of Hiro Isoda at 46-47. We find reasonable minds could conclude appellant complied with the oral notification requirement of R.C. 4113.52(A)(1). The parties do not dispute appellant sent a correspondence dated March 10, 1997, to the United States Environmental Protection Agency. We now must determine whether appellant satisfied the written notification requirement. On March 7, 1997, appellant sent a memorandum to Kawaguchi, Crusey, Sindelar, and Diana Allen, the head of Human Resources, regarding an incident involving Don Westover and appellant during which Westover personally insulted appellant. The memo further states: I request that the issues regarding Mr. Westover [sic] violations of company policy and Environmental Laws be addressed by Executive Management.
* * *
 I expect a response from management within five working days. If I do not receive a response that indicates management [sic] willingness to resolve the problems, I will assume that management is not sincere. This will leave me to resolve the issues as I see necessary.
 Any contact with the company lawyers will be construed as a negative response and I will assume that management is not sincere. I will then immediately proceed as required to preserve the well being of my family and myself.
Deposition of Donald Westover, Exhibit NO. 4.
R.C. 4113.52(A)(1) requires an employee, who has orally notified his employer of a violation, to subsequently file "a written report that provides sufficient detail to identify and describe the violation." We believe reasonable minds could not conclude the above statement complies with the written report requirement. The memorandum merely alleges Westover is violating environmental laws and asks executive management to address those violations. Because the memorandum does not contain sufficient detail to identify and describe the violations, we find appellant did not strictly comply with the dictates of R.C. 4113.52(A)(1). The fact appellant filed a report with the United States EPA without having notified ASI both orally and in writing concerning the alleged environmental violations is fatal to his claim for protection under R.C.4113.52(A)(1). Accordingly, we find the trial court did not err in granting summary judgment in favor of ASI on appellant's claim for statutory protection under R.C. 4113.52(A)(1). Statutory Claim under R.C. 4113.52(A)(2) Although appellant's failure to provide ASI with written notice of the alleged environmental violations is fatal to his claim for protection under R.C. 4113.52(A)(1), we find a genuine issue of material fact exists as to whether appellant is a protected whistleblower under the terms of R.C.4113.52(A)(2). "R.C. 4113.52(A)(2) addresses the situation where an employee becomes aware in the course of his or her employment of a violation of R.C. Chapter 3704 (Air Pollution Control Act), 3734 (Solid and Hazardous Wastes Act), 6109 (Safe Drinking Water Act), or 6111 (Water Pollution Control Act) that is a criminal offense." Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,143. "Under such circumstances, the employee may directly notify any appropriate public official or agency with regulatory authority over the employer and the industry, trade, or business in which the employer is engaged." Id. (Emphasis in original). "There is no requirement in R.C. 4113.52(A)(2) that the employee notify his or her employer of the perceived violations." Id. ASI asserts appellant cannot maintain a cause action under R.C.4113.52(A)(2) because his March 10, 1997 correspondence to the United States EPA "is not a whistleblowing report, if for no other reason than the fact that appellant expressly admitted in his deposition testimony that the Company `wasn't having violations' as of the CAP-1 meeting and at the time of the above letter." Brief of Appellee at 11. (Deposition citation and emphasis omitted). In support of its position, ASI cites to a single statement appellant made during his deposition. A thorough review of the statement and the surrounding text reveals ASI has taken the remark out of context. The statement refers to one area of the plant, specifically, the wastewater treatment facility. As detailed supra, appellant discussed numerous, on-going violations during his presentation at the CAP-1 meeting. Furthermore, appellant's March 10, 1997 correspondence to the EPA not only discusses past violations which had not yet been corrected, but also mentions current violations of the United States Code, including the Federal Water Pollution Act. We find reasonable minds could conclude appellant's letter to the EPA strictly complied with the reporting requirements of R.C. 4113.52(A)(2). Because the trial court entered summary judgment against appellant on his entire statutory claim, we find the trial court erred to the extent it dismissed appellant's claim for protection under R.C. 4113.52(A)(2). Retaliatory Discharge pursuant to R.C.4113.52(B) In its Motion for Summary Judgment, ASI suggested the trial court utilize the burden-shifting framework applicable to employment discrimination cases as such approach is generally helpful to an analysis of a whistleblower claim. We agree. To establish a prima facie case under his whistleblower claim, appellant must show: (1) he engaged in a protected activity under R.C. 4113.52(A); (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse action. See generally, Fennell v. First Step Designs, Ltd. (1st Cir. 1996), 83 F.3d 526, 535. "Once a prima facie showing has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." Id. (Citation omitted). "If the defendant does so, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id. (Citations omitted). "On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Id. (Citation omitted). As such, we must determine whether appellant has presented sufficient evidence to create a jury question as to pretext and discriminatory animus. In it February 11, 1999 Judgment Entry, the trial court found: there clearly is no evidence to support any retaliation as required under [R.C.4113.52(B)]. Retaliation, by definition, requires some type of punishment in kind; to retaliate is to "return like for like, especially to return evil for evil." (Webster's II New College Dictionary, 1995). It is incontrovertible that an employer can not retaliate against an employee for an act when the employer has no knowledge of the employee's deed.
Id. at 7. ASI echoes the trial court's finding, arguing there is no evidence anyone at the company knew about the letter to the EPA at the time of appellant's termination; therefore, appellant's discharge was not the result of appellant's engaging in a protected activity as prohibited by R.C. 4113.52(B), but rather the result of appellant's insubordinate and inappropriate conduct. With respect to ASI's knowledge argument, we find the circumstantial evidence in the record belies ASI's assertion it was unaware of appellant's letter to the EPA. The record reveals during the CAP-1 meeting, appellant orally threatened to report the violations to the United States EPA. Additionally, in his March 7, 1997 Memorandum to Kawaguchi and the others, supra, appellant implicitly stated a lack of response from management would leave him to resolve the issues as he saw necessary and immediately proceed as required to preserve his and his family's well being. Although ASI may have not been aware appellant actually wrote a report to the EPA prior to discharging him, the record suggests ASI had sufficient notice of appellant's intent to do so. We find reasonable minds could conclude ASI's discharge of appellant was preemptive, and was the result of appellant's threatening to "whistleblow." ASI also contends appellant has failed to present additional evidence to establish its proffered legitimate business reason was a pretext. We find the evidence appellant offered to establish his prima facie case of retaliatory discharge is sufficient evidence with which appellant can contest ASI's proffered legitimate reason for his discharge. "A plaintiff who establishes a prima facie case need not introduce additional evidence of discrimination or retaliation to show pretext." Eperesi v. Northernenvirotest Systems, Inc. (6th Cir. 1999), 1999 WL 825034, unreported. (Citation omitted). "Rather, a prima facie case, coupled with disbelief of the employer's proffered reason, will suffice to support a finding of discrimination or retaliation." Id. (Citation omitted). The trial court "should not blindly accept the proffered reason as honest." Id. (Citation omitted). Because the closeness in time between the protected act and appellant's termination coupled with the knowledge which may be imputed to ASI casts doubt on ASI's stated reason for terminating appellant, we find reasonable minds could conclude ASI's proffered legitimate reason was a mere pretext. We further find the trial court erred in finding appellant failed to establish his discharge was retaliatory in nature. Based upon the foregoing, appellant's second assignment of error is sustained as to his claim under R.C. 4113.52(A)(2) and (B). Accordingly, we vacate that portion of the trial court's judgment entry which dismissed appellant's claim for protection under R.C.4113.52(A)(2), reinstate appellant's statutory claim he was unlawfully retaliated against by ASI for having filed an authorized report under R.C. 4113.52(A)(2) and (B), and remand this cause to the trial court for further proceedings.
 I
In his first assignment of error, appellant contends the trial court erred in granting summary judgment in favor of ASI upon a finding appellant's discharge did not violate Ohio public policy. Appellant submits he is entitled to maintain his claim for wrongful discharge in violation of public policy in addition to or in lieu of his statutory cause of action. We agree. In Greeley v. Miami Valley Maintenance Contractors (1990), 49 Ohio St.3d 228, the Ohio Supreme Court held, "Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." Id. at paragraph one of the syllabus. Although the Greeley Court only decide[d] the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute," Id. at 234, the Supreme Court recognized the "public-policy exception to the employment-at-will doctrine need not be premised solely upon a violation of specific statute." Kulch, supra at 149. Subsequently, in Painter v. Graley (1994),70 Ohio St.3d 377, the Ohio Supreme Court, affirming and following Greeley, supra, held: 2. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a "clear public policy." (Citation omitted).
 3. "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. (Citation omitted).
Id. at paragraphs two and three of the syllabus.
 "There is no question that Greeley and Painter recognize that clear public policy may be ascertained from a statutory provision or from any number of other sources." Kulch, supra, at 150. One source of public policy prohibiting appellant's alleged retaliatory discharge is expressly found in R.C. 4113.52, which embodies a clear public policy favoring whistleblowing. In Kulch, supra, the Ohio Supreme Court held: An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to Greeley * * * and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined.
Id. at paragraph 3 of the syllabus. (Citations omitted).
In our discussion of appellant's second assignment of error, we determined appellant did not strictly comply with the requirements of R.C. 4113.52(A)(1) in reporting ASI to the EPA. According, appellant has no foundation for a Greeley claim based on the public policy embodied in R.C. 4113.52(A)(1). However, in our analysis, we found a genuine issue of material fact exists as to whether appellant strictly complied with the requirements of R.C.4113.52(A)(2). If, upon remand, the trier of fact finds appellant strictly complied with the reporting requirements of R.C.4113.52(A)(2) and ASI retaliated against him in a manner contrary to the terms of R.C. 4113.52(B) appellant has stated a foundation for a Greeley claim based on the public policy embodied in R.C.4113.52(A)(2) and (B). Accordingly, we find the trial court erred in granting summary judgment in favor of ASI on appellant's public policy claim under R.C. 4113.52. Even if the trier of fact determines appellant did not strictly comply with the requirements of R.C. 4113.52(A)(2), appellant's public policy claim will not necessarily fail because he has stated a second, independent source of public policy prohibiting the alleged retaliatory discharge of appellant based upon his report to the United States EPA. Appellant asserts "the public policy at stake in this case is the public's strong interest in compliance with environmental laws." Brief of Appellant at 12. As quoted supra, the Ohio Supreme Court has recognized public policy exceptions to the at-will employment doctrine are not limited to public policy specifically expressed by the General Assembly in the form of statutory enactments, and may be discerned based on other sources. However, the Supreme Court noted "such exceptions would be required to be of equally serious import as the violation of a statute." Greeley, supra, at 235. In determining whether appellant herein has a viable common-law cause of action under Greeley and its progeny for wrongful discharge in violation of public policy from a source other than a statutory enactment, we apply the analysis approved by the Ohio Supreme Court: In reviewing future cases, Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the country, has described the elements of the tort as follows:
 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). (Emphasis sic.) Painter, supra at 384, fn. 8. (Citation omitted).
The clarity and jeopardy elements of the tort of wrongful discharge are questions of law to be determined by the court. Kulch, supra at 151. (Citation omitted). "Conversely, the causation and overriding justification elements are questions of fact for the trier-of-fact." Id. (Citation omitted). Given the procedural disposition of the instant action, we must consider only the clarity and jeopardy elements of appellant's wrongful discharge claim. With respect to the clarity element, we agree with appellant and find a source of public policy can be implicitly found in environmental laws and EPA regulations. The general public has a strong interest in being assured corporations comply with environmental laws and EPA regulations. A company's noncompliance with laws and regulations potentially can affect the health and safety of an entire community. We must now consider whether an employer's dismissal of an employee under circumstances like those herein would jeopardize that public policy (the jeopardy element). There is no question the health and safety of the general public would be seriously compromised (jeopardized) if corporations were allowed to disregard environmental laws and EPA regulations. Based upon the foregoing, we find appellant has satisfied the clarity and jeopardy elements with respect to this additional source of public policy. Because appellant has set forth two separate and independent sources of clear public policy justifying an exception to the employment-at-will doctrine, we find the trial court erred in granting summary judgment in favor of ASI on appellant's wrongful discharge in violation of public policy claim. Appellant's first assignment of error is sustained.
 III
In his final assignment of error, appellant submits the trial court erred in granting summary judgment in ASI's favor upon a finding appellant's termination did not violate the company's written policy of progressive discipline prior to just cause termination. In Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, the Ohio Supreme Court held:
 Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. This doctrine has been repeatedly followed by most jurisdictions, including Ohio, which has long recognized the right of employers to discharge employees at will.
Id. at 103. (Citation omitted).
"At the heart of the Mers opinion is the recognition that the history of relations between an employer and employee may give rise to contractual or quasi-contractual obligations despite the fact such relation arose in an employment-at-will context." Kelly v. Georgia-Pacific Corp. (1989), 46 Ohio St.3d 134, 139. When considering an employment relationship, a jury is permitted to consider factors which may give rise to additional obligations on the part of an employer. Id.
"[T]he character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question" can be considered by the jury in order to determine the parties' intent. (Citation omitted). Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. (Citations omitted).
A priori, the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.
Mers, supra, at 104. (Underline emphasis added).
"Any representations by the company which may give rise to obligations over and above those present in an employment-at-will situation would be viewed in reference to their reasonable effect on the employee." Kelly, supra at 139. "[T]he employer's representation is to be determined by what the `promisor should reasonably expect' the employee to believe the promise means if expected action or forbearance results." Mers, supra at 105. Therefore, the doctrine of promissory estoppel is applicable and binding to oral-at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.
Id. at paragraph 3 of the syllabus.
In the instant action, Don Westover, Scott Sindelar, and Diana Allen all acknowledged, during their depositions, ASI has a company policy of termination for just cause only after progressive discipline. Furthermore, ASI's employee handbook sets forth the procedures for counseling and coaching as well as the rules of conduct required of employees and the types of actions taken in response to an employee's failure to abide by those rules of conduct. Given the deposition testimony of ASI management officials relative to the discipline procedures actually implemented as well as the policy as set forth in the employee handbook, we find reasonable minds could conclude ASI should have reasonably expected appellant to rely on this policy. Thus, the determination of this issue cannot be resolved through a motion for summary judgment. The reasonableness of appellant's reliance is a fact question for the jury. We, therefore, find the trial court erred in granting summary judgment in ASI's favor on appellant's claim his termination violated the company's policy of progressive discipline. Appellant's third assignment of error is sustained.
The judgment of the Delaware County Court of Common Pleas is reversed and the cause is remanded to the trial court for further proceedings in accordance with this opinion and the law.
By: Hoffman, J. Edwards, J. concurs separately Wise, P.J. concurs separately.