[NOT FOR PUBLICATION]

United States Court of Appeals
For the First Circuit


No. 96-2062

MANUEL GALVAO,

Plaintiff, Appellant,

v.

THE GILLETTE COMPANY,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Selya, Circuit Judge, 
Coffin and Bownes, Senior Circuit Judges. 



Mark F. Itzkowitz for appellant. 
Richard P. Ward with whom Bonnie B. Edwards was on brief for 
appellee.



August 12, 1997


COFFIN, Senior Circuit Judge. Appellant Manuel Galvao, a 

black Cape Verdean male, contends that the district court erred

in dismissing his federal and state discrimination and

retaliation claims against his former employer, the Gillette

Company ("Gillette").1 He also maintains that the district court

erred in denying his former counsel's motion to withdraw. We

affirm. 

FACTS 

We recite the facts in the light most favorable to the party

opposing summary judgment. See Fennell v. First Steps Designs, 

Ltd., 83 F.3d 526, 534 (1st Cir. 1996). The incidents underlying 

this case began in approximately 1989, when Galvao was working in

the Boston Research and Development Division (BRAD) of Gillette

as a Grade 7 technician. He sought a promotion or upgrade of his

job classification, which was denied.2 Instead, Gillette

supervisors presented Galvao with a Career Development plan

designed to qualify him for promotion to a Grade 8 position. On

Galvao's protest, an audit of his position was performed by the

Gillette Human Resources Compensation Department, which concluded

that his position was properly graded. Galvao sought and
 

1 Galvao specifically claims that it was Gillette as a
corporate entity, and not any specific individuals there, who
discriminated against him.

2 There seems to be some confusion as to whether the
change sought was a promotion or a regrading of Galvao's existing
job. Indeed, Galvao himself testified in his deposition that he
was unclear as to the distinction between the two. The issue is
irrelevant to our analysis, however, since Galvao is unable to
show that there were others similarly situated for either
circumstance. 

-2-

received a review of the audit by Gillette's Open Door Review

Panel, which also upheld the denial of the upgrade.3 

In July 1992, Galvao filed a complaint with the Massachusetts

Commission Against Discrimination ("MCAD"), alleging that he had

been denied a promotion and given a negative performance

evaluation due to his race, color and national origin. He

maintains that after his filing, his supervisors distanced

themselves from him, and subjected him to greater criticism and

demands. He was assigned to a new supervisor, Dr. Hoang Mai

Trankiem, in February 1993.4 Although Trankiem and Galvao

initially had a positive relationship as a result of an in-house

project they had previously worked on together, relations between

them rapidly deteriorated. Trankiem instituted a system of daily

worksheets and productivity reports on Galvao, and, according to

him, exerted tremendous pressure on him, with the result that he

felt increasingly stressed. Despite repeated requests by Galvao

to both Trankiem and her supervisor, Dr. Stan Wreford, for

intervention vis a vis his working responsibilities and

 

3 The Panel was composed of Doris Ferrer Roach, an
attorney in Gillette's General Counsel's Office and a Hispanic
female; Timothy W. Horan, Director of Human Resources-
Manufacturing, a white male; and Robert A. Williams, III, Vice
President, Corporate Director, Urban Affairs, a black male. 

4 Dr. Trankiem is a Vietnamese female. Trankiem
testified in her deposition that she requested she supervise
Galvao in an effort to improve his productivity, which had become
a source of concern under a previous supervisor.

-3-

Trankiem's supervision of him, no help was forthcoming.5 Rather,

Galvao was eventually provided with a Final Written Warning,6 and

then terminated on November 8, 1993. He subsequently filed suit,

bringing both federal and state discrimination and retaliation

claims. The district court granted summary judgment for

Gillette, and this appeal followed.

DISCUSSION 

We review the district court's grant of summary judgment de 

novo. See Mesnick v. General Electric Co., 950 F.2d 816, 822 

(1st Cir. 1992). In so doing, we have thoroughly reviewed the

record and the briefs, and find ourselves in accord with the

district court's conclusions. Mindful that where a district

court has produced a comprehensive, well-reasoned opinion, we

should not needlessly expound at length, we discuss each of

Galvao's claims briefly. See Lawton v. State Mut. Life Assur. 

Co. of America, 101 F.3d 218, 220 (1st Cir. 1996).  

1.Title VII Discrimination. 

Under the well-established McDonnell Douglas framework for Title 

VII cases, see McDonnell Douglas Corp. v. Green, 411 U.S. 792 

(1973); see also Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 

420 (1st Cir. 1996), a plaintiff seeking to prove discrimination

 

5 In one memo to Dr. Wreford, Galvao described Dr.
Trankiem's management style as "Vietnamese" and said he was being
subjected to psychological torture and treated like a prisoner or
a slave. 

6 As part of his Final Written Warning, Galvao was
upgraded to Grade 8 by Dr. Trankiem in an effort to remove a
perceived barrier to his productivity. 

-4-

without direct evidence of bias must first establish a prima

facie case of discrimination. See Lattimore v. Polaroid Corp., 

99 F.3d 456 (1st Cir. 1996).7 This is accomplished by showing

that the employee is a member of a protected class and that

similarly situated employees who were not members of the class

were treated more favorably. See id. If such a showing is made, 

the burden then shifts to the employer to articulate a legitimate

non-discriminatory reason for its actions. See id. Once this is 

accomplished, the employee may then attempt to prove that the

proffered reason is a pretext. See id.8  

The district court found that Galvao had failed to show that

there were similarly situated employees who could be used as a

basis of comparison. We see no flaw in its reasoning. The

employees identified by Galvao either were not in the same grade

as him, or they worked in different areas. 

We recently cautioned that courts must exercise particular

care when evaluating a plaintiff's claim that an employer applied
 

7 Cases decided under the ADEA (Age Discrimination in
Employment Act, 29 U.S.C. 621-634) are applicable in the Title
VII context, see Fennell, 83 F.3d at 535 n. 9, and we therefore 
cite to cases of both types for purposes of the McDonnell-Douglas 
analysis. 

8 The district court concluded this was a "non-
competitive promotion" case (rather than what it termed a "garden
variety" failure to promote case), and therefore adopted a
modification promulgated in a district court case in Tennessee,
Young v. State Farm Mut. Auto. Ins. Co., 868 F.Supp. 937, 944-45 
(W.D. Tenn. 1994). As both the "garden variety" and "non-
competitive promotion" analyses require a plaintiff to address
the key issue here -- i.e. whether the plaintiff is treated
differently from others similarly situated -- we do not for the
present distinguish between non-competitive promotion and other
failure to promote cases. 

-5-

its standards differentially (i.e., distinguished between the 

plaintiff and those similarly situated). See E.E.O.C. v. Amego, 

Inc., 110 F.3d 135, 145 (1st Cir. 1997)(citing Banerjee v. Board 

of Trustees, 648 F.2d 61, 63 (1st Cir. 1981))(in academic tenure 

context, plaintiffs who were denied tenure must show that their

qualifications are at least comparable to those of "a middle

group of tenure candidates as to whom both a decision granting

tenure and a decision denying tenure could be justified as a

reasonable exercise of discretion by the tenure-decision making

body"). A plaintiff must be able, at a minimum, to demonstrate

that there are at least some basically comparable employees.

Galvao was unable to do this.

Although the district court's finding that Galvao had failed

to make out a prima facie case made it unnecessary to continue

the McDonnell Douglas analysis, the district court went on to 

find that Gillette's proffered reason for not upgrading Galvao --

that he lacked the credentials and characteristics of a Grade 8

technician -- was not a pretext. The district court thoroughly

addressed the evidence on this issue, and we need not repeat it.

We agree that, on this record, a jury could not conclude that

Gillette's reasons were pretextual, and Galvao s Title VII

discrimination claim therefore fails. 

2. Title VII Retaliation. 

Galvao also contends that the district court erred in

dismissing his separate claim that Gillette retaliated against

him for filing the MCAD complaint. He asserts that his

-6-

supervisor subjected him to undue supervision and assessment, and

ultimately terminated him in response to his administrative

claim. 

The McDonnell Douglas burden shifting analysis is also used 

in retaliation claims where there is no direct evidence of a

defendant's retaliatory animus. See Fennell, 83 F.3d at 535. A 

plaintiff seeking to show a prima facie case of retaliation under

Title VII must show 1) he or she engaged in protected conduct

under Title VII and that the alleged retaliator was aware of it,

2) an adverse employment action, and 3) a causal connection

between the first two elements. See id.; see also Petitti v. New 

England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990). Once 

this showing has been made, the burden shifts to the defendant to

articulate a legitimate non-discriminatory reason for its

employment decision. See Fennell, 853 F.3d at 535. 

Even given a generous reading, Galvao's retaliation claim

falters. While he can establish that he engaged in protected

conduct -- the filing of the MCAD complaint -- he has failed to

show that Gillette personnel knew about this at the time of the

allegedly adverse employment actions, or that there was a causal

relationship between his filing his MCAD complaint and the

challenged conduct. As the district court explained, the record

shows that the adverse employment actions of which he complains,

including his termination, were the result of his own poor

performance and insubordination. 

-7-

3. Motion of Counsel to Withdraw. 

Galvao also contends that the district court erred in

denying his previous counsel's motion to withdraw. He argues

that the court's ruling compelled him to continue with counsel in

whom he had lost faith, and whose commitment to his case he

doubted, and that his case was thereby prejudiced. Under Local

Rule 83.5.2(c), because successor counsel had not been obtained

by Galvao, it was within the court's discretion whether to grant

his counsel's motion to withdraw.9 In the circumstances, we

cannot say that the court's refusal to do so was an abuse of

discretion. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 

135 (1st Cir. 1985). Title VII litigation is complex and a pro

se litigant embarks on this path with some significant

disadvantage. The court's conclusion that Galvao was better off

with counsel, even if they were not exactly seeing eye to eye,

was not an unreasonable one. Moreover, the court indicated that

it would be willing to reconsider the issue later. Furthermore,
 

9 Rule 83.5.2(c) states:

An attorney may withdraw from a case by
serving notice of his withdrawal on his
client and all other parties and filing the
notice, provided that (1) such notice is
preceded or accompanied by notice of the
appearance of other counsel; (2) there are no
motions pending before the court; (3) no
trial date has been set; and (4) no hearings
or conferences are scheduled, and no reports,
oral or written, are due. Unless these
conditions are met, an attorney (including
one whose services have been terminated by
his client) may withdraw from a case only by
leave of court.

-8-

although we realize that a serious difference existed between

Galvao and his counsel, it appears from the record that the

district court made every effort to permit Galvao to present his

case as he wished.10 

Additionally, Galvao's counsel was bound by an ethical

obligation to prosecute his case fully and effectively. See 

Hammond v. T.J. Little, 809 F.Supp. 156, 159 (D.Mass. 1992). 

Galvao maintains that his counsel failed to do so because she did

not present various documents obtained during the course of

discovery to the court which he alleges would have bolstered his

case. We decline Galvao's invitation to second guess his

counsel's strategic decisions about the evidence to present in

support of a claim. 

4. State law claims. 

Finally, Galvao appeals the dismissal of his state law

discrimination and retaliation claims by the district court,

arguing that under the more relaxed standard used in

Massachusetts ("pretext only"), a jury could have found, on the

basis of the evidence that he presented, that Gillette's reasons

for failing to upgrade him and terminating him were pretextual.

In support of this contention, Galvao cites Blare v. Husky 

Injection Molding Systems Boston, Inc., 419 Mass. 437 (1995). We 

 

10 In a pretrial hearing, the district court specifically
informed Galvao that he had instructed his counsel that in any
situation where a difference arose between Galvao and counsel as
to the presentation of arguments, Galvao's counsel should present
it both in the form that Galvao wished and in the form that
counsel's legal judgment suggested.

-9-

read Blare as holding that Massachusetts, while adhering to the 

three stage McDonnell Douglas analysis, requires that a plaintiff 

show only that it was more likely than not that the articulated

reason for the employer's action was pretextual, rather than

providing more direct proof of discriminatory motive by the

employer, as the federal standard requires. See id. at 444-45; 

see also Lattimore, 99 F.3d at 465. As discussed, infra (and 

putting to one side his failure to show that there were similarly

situated employees), Galvao failed to adduce any significant

evidence to support his claim that Gillette's articulated reasons

for its actions were pretextual. Accordingly, his state claim

founders on this lack of evidence of pretext, just as his federal

one did. 

Affirmed. 

-10-