**Vivienne DIAZ DIAZ Plaintiff**

v.

**CROWLEY LINER SERVICES, INC., et al Defendants**

**No. CIV. 01–1470(SEC).**

United States District Court, D. Puerto Rico.

Sept. 9, 2003.

José M. Carreras, Esq., San Juan, PR, for Plaintiff.

Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

### END OF FRONT MATTER

Pending before the Court is Defendants' motion for summary judgment (**Docket # 30**), where they argue that Plaintiffs have failed to establish a *prima facie* case of discrimination. Having reviewed said motion, Plaintiff's opposition (**Docket # 45**), Defendants' reply (**Docket # 54**) and, Plaintiff's sur-reply (**Docket # 67**) the Court will **GRANT** Defendants' motion, and the case will be **DISMISSED WITH PREJUDICE**.

#### Factual Background

The above captioned action has been filed by Plaintiff, Vivienne Diaz Diaz, a union employee of Defendant, Crowley American Transport, Puerto Rico, Inc., ("CAT PR"), seeking relief under various federal and local statutes. Plaintiff is demanding indemnification for the alleged damages she suffered after being bumped

from her position by a fellow union employee as a consequence of the layoff that took place in January 2000 at CAT PR. In particular, she claims that CAT PR failed to grant her, because of her gender, two (2) of the three (3) positions she requested after being bumped, and that said positions were awarded to male employees who did not meet the job requirements. She claims that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a)(1). Furthermore, Plaintiff also seeks the exercise of supplemental jurisdiction over claims under Act 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 § 146–151 and Act 69 of July 6, 1985 as amended, P.R. Laws Ann. tit. 29 § 1321–1341.

Crowley Liner Service, Inc. ("CLS"), is a Delaware corporation that engages in the ocean cargo transportation industry. It operates in Puerto Rico, as well as other parts of the United States such as the East Coast, West Coast, Gulf, Virgin Islands and international ports. CLS was previously known as Crowley American Transport, Inc. Crowley American Transport, Puerto Rico, Inc. ("CAT PR") is a corporation which operates at Isla Grande, Puerto Rico. It is currently known as Crowley Liner Services, Puerto Rico, Inc. Its employees have been represented by the Union de Tronquistas de Puerto Rico, Local 901 ("the Union") since approximately 1972, and the Company has been party to several Collective Bargaining Agreements since then. The Plaintiff has been a member of the CAT PR bargaining unit since March 3, 1997. CAT PR employees work in the loading and unloading operation of CLS's ocean cargo vessels.

Plaintiff started working at CAT PR on March 3, 1997 in Quality Control, a position covered by the Collective Bargaining Agreement with the Union. Plaintiff had previously worked in other Crowley corporations, and had belonged to a different bargaining unit of the Union. While being a CAT employee, as a result of a representation proceeding before the National Labor Relations Board, Plaintiff became a Union employee effective January 1, 1993. Diaz belonged to a bargaining unit of CAT San Miguel/Miramar.

As a result of the closing of CAT's Warehouse operations and the termination of the applicable Collective Bargaining Agreements, the Union asked CAT PR to open several new positions under its Collective Bargaining Agreement at Isla Grande. CAT PR negotiated with the Union, and opened the following new positions under its Collective Bargaining Agreement: three (3) IS Coordinators and one (1) of each of the following: Buyer, Materials Coordinator, Quality Assurance, Tariff Specialist, and Protection & Indemnity.

CAT PR and the Union agreed to the duties, responsibilities, requirements, compensation and benefits of each position. Moreover, they agreed that the new classifications would be filled pursuant to the procedure established in the Collective Bargaining Agreement, which required that all openings be posted to allow any interested bargaining unit members to apply. If those who applied were not qualified, CAT PR had to ask the Union for candidates, and among those applicants the Company would have to decide who would get the job. In February 1997, CAT PR, in compliance with the Collective Bargaining Agreement posted all the newly created positions. However, none of the bargaining unit employees applied for any of them. Therefore, CAT PR considered the external candidates sent by the Union.

Right after Plaintiff was laid off from CAT, (February 27, 1997) she applied for the vacant position of Quality Assurance at CAT PR's Documentation Department in Isla Grande. Mr. Julio Cora, the Labor

Relation Manager at that time, interviewed and hired Plaintiff since she was qualified, and Plaintiff's seniority date under the CAT PR Collective Bargaining Agreement was March 3, 1997.

In October of 1997, CLS PR notified the Union that a layoff would take place in which approximately twenty three (23) positions would be affected. Even though Plaintiffs position was not eliminated, on January 17, 1998 Jorge Marrero, an employee with greater seniority than her in the bargaining unit, bumped onto her job classification of Quality Assurance as provided by Article XVI, Section 9 of the Collective Bargaining Agreement. Marrero's seniority was May 13, 1996, while Plaintiff's was March 3,1997.

Plaintiff also used her seniority rights and bumped onto the classification of Laborer occupied by an employee with less seniority than her, Angel Andino (seniority August 26, 1997). The Company awarded her the position on January 14, 1998. José Marrero was later bumped by David Rivera (seniority April 12, 1995) who was finally bumped by Migdalia Magriz (seniority April 12, 1994) on March 26, 1998.

In January 2000, another layoff took place at CAT PR. During this layoff, Migdalia Magriz, pursuant to Article XVI, Section 9 of the applicable Collective Bargaining Agreement, bumped onto Plaintiff's Utility Clerk position. In turn, Plaintiff also exercised her contractual bumping rights and applied for the following positions: IS Coordinator occupied by Harry Martinez (Seniority March 3, 1997); Pump Operator, occupied by Ramon Herrera (Seniority June 20, 1997); and Laborer, occupied by Rogelio Lugo (Seniority April 2,1997).

Diaz was denied the Pump Operator and IS Coordinator jobs because she did not qualify, and according to Article XVI, Section 9, an employee may not bump onto a job classification if he/she does not qualify.

In addition, as to the IS Coordinator position, she did not have more seniority than Harry Martinez, the employee she was trying to replace. However, Diaz was awarded the Laborer position which was occupied by Rogelio Lugo.

Two other employees were also denied the Pump Operator job, because they lacked the necessary experience as Tankerman. In January 2000, Angel Chico, who had more seniority than the Plaintiff, also applied for the Pump Operator position. Chico's seniority was February 11, 1987. He did not get the position because he lacked the necessary qualifications. Likewise, Mr. Andrés Latorre, who applied for the Pump Operator position in February 2000, was also rejected for the same reason.

After Diaz was rejected from the IS Coordinator and Pump Operator positions, the Union filed on behalf of her and other three (3) employees (Angel Chico, Carmen Cordero and Diego Nuñez), an arbitration case claiming that CAT PR violated their right to bump onto several job classifications after the layoff of January 2000. On June 27, 2001, Arbitrator Marilu Diaz Casaflas issued an award holding that the Company did not violate the Collective Bargaining Agreement with respect to Diaz.

As to Diaz's claim, the Arbitrator held that she did not qualify for the IS Coordinator job, because Plaintiff did not meet the educational requirements and, as such, was not entitled to bump onto the position. As to the Pump Operator job, the Arbitrator ordered CAT PR to award it to Angel Chico since he had more seniority than Diaz. The Arbitrator determined that the five (5) years Tankerman experience required by the job description negotiated with the Union was unwarranted.

In February 2000, according to the Agreement between the Union and CAT

PR, the number of persons on the Laborer List could not exceed 97. By June 1, 2000, there were 103 Laborers on the List. As a result of this excess of six (6) employees, on June 1, 2000, six individuals were notified they would be laid off effective June 16, 2000. The affected employees were: Yolanda Diaz, Carmen Solla, Rogelio Lugo, Alfredo Cuevas, Angel Andino and Plaintiff. Shortly after the notification, during the collective bargaining negotiations of the Agreement that expired on March 26, 2000, the parties agreed to leave without effect the layoff. Therefore, Plaintiff was never laid off. In the negotiations, the Union and CAT PR agreed that the reduction of the Laborers List would be made by March 26, 2003, at the expiration of the Collective Bargaining Agreement and that the total number of laborers would be reduced to 65.

Plaintiff continued to work with CAT PR as a Laborer. On June 24, 2002, Diaz requested the position of Utility Accounting Clerk, which was vacant. On August 7, 2002, CAT PR awarded her the position. As of this date, she has continued working in that position.

Defendants have requested that Plaintiff's claims be dismissed insofar as under the facts involved, no real genuine controversy of material facts exists to be tried; and that Plaintiff has failed to establish a *prima facie* case of discrimination. Defendants allege that the decision of not awarding her two (2) of the positions requested in January 2000 was not based on illegal discrimination or on the violation of any law, but rather on a legitimate business decision in compliance with the applicable Collective Bargaining Agreement between CAT PR and the Union de Tronquistas de Puerto Rico, Local 901 ("the Union"). They argue that this same controversy was tried at the Conciliation and Arbitration Bureau of the Department of Labor and Human Resources of Puerto Rico and, in that instance, an Arbitration Award was issued on June 27, 2001, which held that under the applicable Collective Bargaining Agreement, Plaintiff was not entitled to the two (2) positions requested by her.

**Motion for Summary Judgment Standard**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Munoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the non-movant, would permit a

rational fact finder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared." *Martinez v. Colon,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); **the non-movant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Further-

more, "the non-movant must produce specific facts, in suitable evidentiary form sufficient to limn a trial worthy issue ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Munoz,* 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.")

### Applicable Law and Analysis

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 20002–2(a)(1), prohibits any employer from engaging in unlawful employment practices based upon a person's race, color, religion, sex or national origin. *Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F.3d 5, 13 (1st Cir.1998). Absent the existence of direct evidence of intentional discrimination, a typical Title VII plaintiff alleging disparate treatment must employ the familiar burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996).

Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of Title VII discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The specifications of the prima facie case vary depending on the nature of the discrimination claim. *Id.* at n. 13. In the case of caption, Plaintiffs main contention is that CAT PR did not

award her two (2) of the three (3) position she requested and that said positions were awarded to male employees who allegedly did not meet the position requirements. Since her cause of action is similar to one of failure to hire, in order for Diaz to establish a *prima facie* case of sex discrimination, she has to show the following: (1) that she is a female; (2) she was qualified for the job; (3) she was not hired despite her qualification; and (4) the job was given to a male. *Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1023 (1st Cir.1988).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason. *Zapata–Matos v. Reckitt & Colman Inc.* 277 F.3d 40 (1st Cir.2002) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). At this stage, defendant's burden is "exceedingly light," and "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

After these first two steps have been satisfied, it is incumbent upon plaintiff to show that the employer's proffered non-discriminatory reason is a pretext. To this effect, and "in the context of a summary judgment proceeding, ... once the employer has advanced a legitimate, non-discriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the fact finder to reasonably conclude that the employer's decision ... was wrongfully based on discriminatory reasons." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993). *St. Mary's Honor v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This, in turn, requires that the plaintiff proffer enough competent evidence to support two separate findings: that the employer's

reason was pretextual and that its true motive was discrimination on the basis of sex. *Zapata–Matos* 277 F.3d at 45.

█ In the case of caption, Plaintiff fails to establish the elements needed to establish a *prima facie* case of sex discrimination. CAT PR, for purposes of this motion, has conceded that Plaintiff is a female and that the IS Coordinator and Pump Operator classifications were occupied by males. In the Complaint, Diaz mainly asserts that on January 2000, CAT PR denied her application for the IS Coordinator and Pump Operator positions because of her gender. However, the uncontested facts supported by Plaintiff's own admissions, clearly demonstrate that she was not qualified to fill these classifications.

Diaz applied to the IS Coordinator and Pump Operator positions after she was bumped from her job in January 2000, as a result of a layoff in CAT PR. The Union and CAT PR had negotiated the duties, responsibilities and requirements for the IS Coordinator job in February 1997, when it was included in the bargaining unit. The position required at least an Associate Degree in Computer Sciences or Information Systems, but preferably a Bachelor's Degree in those areas. Since Plaintiff did not meet said educational requirements for the position, she was not qualified to fill the job of IS Coordinator. Plaintiff also was not qualified for the Pump Operator job. By her own admission, she did not have the required five (5) years experience as "Tankerman". Moreover, she had no experience at all as a Pump Operator. (Transcript of the Arbitration Case No. A–01 –240, p. 73).

█ Even if we assume, *arguendo,* for purposes of this Motion for Summary Judgment that Plaintiff can establish a *prima facie* case, the Plaintiff still lacks evidence to prove that her gender was the motive for failing to award her the posi-

tions of IS Coordinator or Pump Operator. Under *McDonnell Douglas,* a *prima facie* case creates only a presumption of discrimination. Once a *prima facie* case is established, the burden to rebut the presumption then rests on the employer. The employer needs only to articulate—not prove—some legitimate, non-discriminatory reasons for the employment action in question. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

CAT PR has provided evidence that establishes a legitimate non-discriminatory reason for not awarding Diaz two (2) of the three (3) positions she requested. Diaz was not only not qualified for the jobs, but CAT PR also had a contractual obligation with the Union that spelled out how positions would be granted when a layoff occurred and employees exercised their bumping rights. Article XVI of the Collective Bargaining Agreement regulates the seniority rights of the employees in CAT PR. In specific, Section 1 defines seniority as "an employee's time of service within the contracting unit, by department and by classification". Section 2 establishes that seniority rights will prevail, amongst other, for purposes of layoffs, claim of positions, and re-calls.

Bumping rights are spelled out in Article XVI, Section 9, which in essence provides that employees have to comply with the following three (3) requirements in order to claim a position: (1) the employee has to have more seniority within the contracting unit than the employee holding the position; (2) the employee claiming the position has to be able to do the work; and (3) the employee claiming a position has to fulfill the requirements of the position as established in the job description.

The IS Coordinator position Diaz tried to claim was occupied by Harry Martinez, who had her same seniority within the contracting unit (March 3, 1997). Therefore, Diaz in addition to not meeting the requirements of the job description, did not have more seniority than Martinez. Therefore, two of the necessary elements of Article XVI, Section 9, were not present—qualifications and seniority. Diaz was also denied the Pump Operator position because she simply did not have the five (5) years experience as a Tankerman, which was a requirement in the job description as negotiated with the Union.

■ It is important to note, that the Union filed an arbitration case on behalf of Diaz and three (3) other employees, (Angel Chico, Carmen Cordero and Diego Nuñez) who had also been denied positions they requested while exercising their bumping rights after the layoff of January 2000. Even the Arbitrator, who heard the case, held that Diaz was not qualified for the positions. Whether binding on the District Court or not, an arbitrator's findings relating to an interpretation of the Collective Bargaining Agreement, or an application of the labor contract to the facts, should ordinarily be considered by the Court. Even on issues relating to the existence of discriminatory or retaliatory animus, the award can be highly probative, and wholly ignoring it can constitute an abuse of discretion. *Owens v. Texaco,* 857 F.2d 262, 264–66 (5th Cir.1988). *Becton v. Detroit Terminal of Consolidated Freightways,* 687 F.2d 140 (6th Cir.1982). (holding that the probative value of the award constituted evidence of a legitimate reason for plaintiffs' discharge, and summary judgment was found to be proper.)

In reference to the Pump Operator classification, the Arbitrator ordered CAT PR to award it to Angel Chico. Chico tried to bump onto the Pump Operator job which at that time was held by Ramón Herrera. CAT PR had also denied him the position, because like Diaz, he lacked the five (5) years experience as a "Tankerman". The Arbitrator found that Chico had more se-

niority than Diaz, and therefore was entitled to fill the position.

■ Having established CAT PR's non-discriminatory motive for not awarding Diaz the positions, she must then prove that the reason articulated by the Company is a pretext, and that discrimination was the real reason for the adverse employment action. *St. Mary's Honor*, 509 U.S. at 513, 113 S.Ct. 2742. The plaintiff retains the ultimate burden of proving that she was the victim of intentional discrimination. *Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 536 (1st Cir.1996). To meet her burden, the plaintiff has to present admissible evidence to prove the falsity of the employer's explanation. However, proof that the employer's reason is unpersuasive or even obviously contrived does not necessarily establish plaintiffs explanation of intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff will always have the ultimate burden of persuading the trier of facts that the defendant intentionally discriminated against her. *Id.*

In the present case, we find that Plaintiff lacks any concrete evidence to show pretext to discriminate. She only bases her sex discrimination claim on her subjective belief, while the objective facts, which have not been contested, demonstrate the opposite. Diaz asserts in her Opposition that by permitting male employees to fill positions for which they did not qualify constitutes direct evidence of discrimination. Plaintiff contends that she has complied with her burden by only alleging that males received better treatment than her when requesting a position. However, Plaintiff's analysis is totally incorrect. In order to establish differential treatment, she must first show that males were similarly situated and that she was treated differently. *Rivas Rosado v. Radio Shack*, 312 F.3d 532–534 (1st Cir.2002).

However, direct evidence of intentional discrimination as it has been recognized by the First Circuit, takes the form of an employer's oral or written policy, which on its face is discriminatory, or statements normally made by decision makers demonstrating discriminatory bias against the plaintiff with respect to the adverse employment action. *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002) (explaining that direct evidence is evidence that unambiguously implicates a discriminatory motive.)

The First Circuit has made clear that inherently ambiguous statements do not qualify as direct evidence. In *Weston–Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 66 (1st Cir.2002), the Court held that the silence of a supervisor after being accused by the plaintiff that he had made the statement to a third person, that the plaintiff was laid off because of her maternity leave, does not constitute direct evidence of discrimination. In *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 583 (1st Cir.1999) the court held that the statement "I don't need minorities and I don't need residents on this job" was ambiguous because in context it might have reflected "a benign response to a specific inquiry reflecting [the speaker's] ... perception that he no longer had to make special efforts to comply with EEO requirements." In *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, (1st Cir.1998), the court held that a store manager's statement that the plaintiff had "a perfect case of age discrimination" is not direct evidence because there was insufficient evidence linking the manager to the actual decision-making process for the statement to be admissible.

Plaintiff's core argument in her Opposition is that CAT PR has permitted several

male employees to occupy positions without meeting the job requirements, but she was denied the same opportunity when she applied for the IS Coordinator and Pump Operator positions. However, the record demonstrates quite the opposite. Andrés Latorre and Angel Chico, who are male employees at CAT PR, also applied for the Pump Operator classification almost at the same time as Plaintiff (between January–February 2000). Both applications for the position were denied for the same reasons given to Diaz—they simply did not qualify. They did not meet the requirement of five (5) years of experience as Tankerman.

■ In her Opposition, Diaz also tries to establish her sex discrimination claim by making reference to an alleged conversation between Mr. Julio Cora, former Labor Relations Manager of CAT PR, and Mr. Noel Colon, former President of the Union. Diaz contends in her Opposition: "Basically Mr. Cora stated that the Pump Operator Position which entailed working on a shipyard and a barge was not adequate for plaintiff, who is women [sic]. However Mr. Cora stated that plaintiff could perform "womanly" duties such as the one done by a janitor. The remarks made by Mr. Cora to plaintiff after denying her various positions is clearly indicative of the reasons for which the plaintiff had been denied the position, i.e. she wanted men's jobs and men were needed" (Docket #45 at page 28). However, the facts, as Plaintiff herself explained during her deposition, distance themselves from her allegations made now in her Opposition. The conversation of reference took place during the grievance procedure when she was denied the IS Coordinator position. In her deposition, Diaz declared that Colon supposedly said: "The only thing left now is that if she ask [sic] you for the janitor's position, you denied [sic] it.". Needless to say that even if we assume that the alleged comment was made by Cora, this stray remark is hardly evidence of sex discrimination animus. Rude comments which are gender neutral do not imply discriminatory attitude. *Cardona v. Aramark Services Puerto Rico,* 9 F.Supp. 2d 92, 97 (D.P.R.1998).

Plaintiff has also alleged discrimination because of retaliation. She alleges that in June 2000, after filing her discrimination case before the Anti–Discrimination Unit, she received a notice of layoff. However, it is important to note that she was not the only person who got the notification. The layoff was going to affect a total of three (3) males and three (3) females in the Laborers List (Yolanda Diaz, Carmen Solla, Rogelio Lugo, Alfredo Cuevas and also Angel Andino received the letters).

■ In order to succeed in a retaliation claim, when, as in this case, there is no direct evidence of retaliatory animus, a plaintiff must both establish a *prima facie* case and prove that the defendant's legitimate reasons for terminating the plaintiff were pretextual. *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir. 1996); *Lewis v. Gillette Co.,* 22 F.3d 22, 24–25 (1st Cir.1994) (observing that Massachusetts' retaliation law parallels federal law).

■ Specifically, to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in protected conduct; (2) she **suffered an adverse** employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *Fennell,* 83 F.3d at 535. Once the plaintiff has made a *prima facie* showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Id.* If the defendant does so, the plaintiff must show that the defendant's proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant's retaliatory animus. *Id.*

■ In the case at hand the layoff notice given to the plaintiff was later withdrawn by the Company. Therefore, there was no adverse employment action. *Ramos–Biaggi v. Martinez*, 98 F.Supp.2d 171, 172–178 (D.Puerto Rico 2000) (stating that a plaintiff must show that she suffered a retaliatory action). In view of the above, Plaintiff lacks any evidence of retaliation.

Finally, Plaintiff also makes reference to some limited instances in which she claims that various male employees have been permitted by the Company to bump onto other employees' positions without fulfilling all the requirements of the jobs. This allegation refers to an instance in 1998 where she was bumped by Jorge Marrero. However, Plaintiff fails to mention that Marrero was later bumped by David Rivera who was finally bumped by Migdalia Magriz, a woman, on March 1998. Therefore, the Court cannot view this allegation as containing any substantive value for establishing sex discrimination.

**Conclusion**

■ Plaintiff's mere subjective belief and allegations that she was discriminated against cannot be the basis for judicial relief where adequate nondiscriminatory reasons are presented. *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–247 (5th Cir.1985). A plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive ..." "age or national origin discrimination." *Medina–Munoz*, 896 F.2d at 9; *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir.1991). "A plaintiff [claiming discrimination] 'may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.'" *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir.

1992) (*quoting Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 53 (1st Cir. 1990)).

The facts and the evidence presented in this case do not portray that Defendant acted with a discriminatory animus. Plaintiff was never left without a job. She applied for and was awarded a Laborer position which was previously held by a male employee. As a Laborer, the Company trained her in RMIS, the system used in the Claims Department at CAT PR. She also took the Pump Operator training. In addition, the uncontested facts demonstrate that Plaintiff never lost any fringe benefits. Finally, on August 7, 2002, CAT PR awarded Diaz the position of Utility Accounting Clerk, which was vacant.

Therefore, due to Plaintiff's failure to present substantive evidence or facts that evidences that she was discriminated against or subject to disparate treatment because of her sex, we must conclude that Plaintiff's claim under Tittle VII does not comply with the framework enunciated in *McDonnell Douglas* and, furthermore, does not meet the standards required to survive a motion for summary judgment. Hence, Plaintiff's claim against Defendants will be **DISMISSED WITH PREJUDICE.**

■ As to the pending pendent jurisdiction claims against Defendants, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.*, 727 F.Supp. 701, 709 (D.Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991).

Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs*, 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Federal Bank*, 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990); *cf. Vega v. Kodak Caribbean*, 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon*, 484 U.S. at 350 n. 5, 108 S.Ct. 614, citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Since Plaintiffs are not entitled to any award under Title VII of the Civil Rights Act, the only award Plaintiffs could, in any event, pursue against Defendants would be under the Commonwealth statutes. Therefore, Plaintiff's claims against Defendants under the laws and the Constitution of the Commonwealth of Puerto Rico are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**