Rafael **GARCIA**, et al., Plaintiffs,

v.

**V. SUAREZ & CO., et al., Defendants.**

**No. 01–2015 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 30, 2003.

Osvaldo Carlo–Linares, Lydia M. Ramos–Cruz, Lausell & Carlo, PSC, San Juan, PR, for plaintiffs.

Arturo Diaz–Angueira, Roberto Feliberti, Cancio, Nadal, Rivera & Diaz, Frances R. Colon–Rivera, Saldana & Carvajal, Martha L. Martinez–Rodriguez, Manuel A. Nunez Law Offices, San Juan, PR, for defendant.

### *OPINION & ORDER*

DOMINGUEZ, District Judge.

Pending before the Court is Defendant V. Suarez' Motion for Summary Judgment (Docket No. 30) filed on January 31, 2003. After reviewing Defendant's motion for summary judgment and Plaintiff's opposition, the Court concludes that limited issues of material fact involving credibility determinations and/or weighing of the evidence exist and Defendant is entitled at this time to only judgment as a matter of law on the Title VII sexual harassment claims. As a result, the Court grants in part and denies in part Defendant's Motion for Summary Judgment (Docket No. 30) as explained below.

## I. SUMMARY JUDGMENT STANDARD

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapion v. Martinez*, 119 F.3d 982, 986 (1st Cir.1997),(*citing McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995))(collecting cases); *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir. 1995)(same). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. *Perez v. Volvo Car Corporation*, 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy–Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is "material" if it potentially could affect the suit's outcome. *Id.* An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *Id.* At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *See Cadle Company v. Hayes*, 116 F.3d 957, 959–60 (1st Cir.1997).

## II. SUMMARY OF FACTS

Plaintiff Garcia began working for Defendant V. Suarez, a food and beverage distributor, on October 19, 1998 as a District Manager. As a District Manager, Plaintiff had several salespeople under his supervision. After nearly a year on the job, Plaintiff Garcia and other employees of V. Suarez were selected to attend a free incentive trip sponsored by Coors Light in Washington D.C. from August 26, 1999 to August 29, 1999.

Upon Plaintiff Garcia's return from the sponsored trip, Plaintiff Garcia reported an incident of sexual harassment to management. Plaintiff Garcia explained that the night of the employees' arrival, a re-

ception cocktail was held at the hotel. Early in the morning of August 27, 1999 (around 1:15 a.m.–1:25 a.m.) Plaintiff Garcia went up to his room with V. Suarez employees Carlos Rubio ("Rubio"), Juan Anibal Gonzalez ("Gonzalez"), Damian Santiago ("Santiago"), and Delfin Colon ("Colon"). After Gonzalez and Rubio left the room with cigarettes, Plaintiff Garcia was left in his room with Colon and Santiago, both salepersons.

A pornographic movie was put on the television and Colon exposed his penis and approached Garcia's buttocks. Garcia became upset, told Colon to "put it inside [his pants]" and Santiago left the room. Colon would later attempt to force Plaintiff Garcia to have oral sex with him. Finally, after insisting that Colon leave the room, Garcia left for help from co-workers.

After Plaintiff made his report, management investigated and met with Colon on August 31, 1999 and informed him he would be terminated. Both management and Colon eventually agreed to provide Colon with early retirement as Colon had reached the required age of 55 and had provided 31 years of service.

Other employees on the trip then reported to management that Plaintiff Garcia had engaged in offensive conduct during the same business trip. The employees reported that on August 28, 1999, Plaintiff Garcia attended Polyester's Nite Club with several V. Suarez employees and blew into the ear of one employee, complimented an employee's body, danced exotically, grabbed an employee by the neck, and generally made inappropriate comments. Management met with the employees and took reports on the situation. Plaintiff Garcia was subsequently dismissed on September 2, 1999.

As part of the general sexual harassment claim, Plaintiff Garcia also states that prior to the events of this trip described above, male co-workers would often grab each others buttocks in the workplace and would make explicit comments regarding females. Though he filed no formal complaint, he was told by other employees that it was normal and he should get used to it.

## III. RETALIATION FRAMEWORK

The Court begins with the analysis of Plaintiff's retaliation claim for opposing an unlawful employment practice in violation of Title VII. Plaintiff Garcia's claim is that he was dismissed as a result of reporting the sexual encounter with Colon in his hotel room. Because no direct evidence of retaliation exists, the Court examines this case under the *McDonnell Douglas* burden-shifting framework which allocates burdens in producing evidence. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In order to establish a prima facie case of retaliation, Plaintiff Garcia must show that: 1) he engaged in protected conduct under Title VII; 2) he suffered an adverse employment action; and 3) a causal connection between the protected conduct and the adverse action. *See Hoeppner v. Crotched Mountain Rehabilitation Ctr.,* 31 F.3d 9, 14 (1st Cir.1994); *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996).

Once a prima facie case of retaliation has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991). If the defendant can articular a legitimate, non-retaliatory reason, the burden shifts back to the plaintiff to show that the proffered reason is a non-reason, pretext, or sham and that

the employment action was in fact the result of retaliatory animus. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Mesnick,* 950 F.2d at 827–28.

"On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." *Fennell,* 83 F.3d at 535 *citing Mesnick,* 950 F.2d at 827.

## IV. APPLICATION OF THE RETALIATION FRAMEWORK

■ Defendant does not dispute that Plaintiff has set forth a prima facie showing of retaliation. After all, Plaintiff engaged in protected conduct by reporting the sexual encounter in the hotel room. Plaintiff suffered an adverse employment action when he was dismissed and it was causally connected by the mere fact that the dismissal was made shortly after Plaintiff's complaints were lodged. The Court notes that the prima facie burden is not onerous and can be met by "demonstrating, among other things, that [the] termination occurred shortly after [the] protected conduct, the report of the harassment." *Fennell,* 83 F.3d at 535 *citing Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 110 (1st Cir.1988). The prima facie case is strong. Furthermore, Plaintiff's August 30, 1999 reporting and September 2, 1999 dismissal are sufficient to establish the third element of a prima facie case of retaliation.

■ The burden thus shifts to Defendant V. Suarez to articulate a non-retaliatory basis for the dismissal of Plaintiff Garcia. Defendant has clearly articulated a sufficient non-retaliatory and legitimate reason for the dismissal, i.e. Plaintiff Garcia was involved in inappropriate and sexually harassing conduct which took place at the Polyester Nite Club in Washington D.C.

■ This articulation forces · Plaintiff to provide evidence that the dismissal based on inappropriate behavior was a sham and the employment action was actually a result of retaliatory animus. In evaluating any evidence Plaintiff sets forth, the Court must be extremely careful. Both the Supreme Court and the First Circuit have provided clear and concise precedent regarding summary judgment and those issues which serve to preclude such a finding in the District Court. Among these preclusive issues are motive, intent, credibility, and weighing of evidence when ruling on the pending motion for summary judgment. As a result, the Supreme Court and the First Circuit have limited the extent to which the District Court may consider certain evidence at summary judgment.[1]

1. The Supreme Court announced in *Poller v. C.B.S.:*

[S]*ummary procedures should be used sparingly* in complex antitrust litigation *where motive and intent play leading roles,* the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."
*Poller v. C.B.S.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) *(emphasis added ). See also Pullman–Standard v. Swint,* 456 U.S. 273, 288–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); *United States v. Yellow Cab Co.,* 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949) ("[f]indings as to the design, motive and in-

The Court notes that Plaintiff has de-

tent with which men act" are factual issues for the trier of fact).

When specifically dealing with discrimination cases, the First Circuit has stated, "where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." *Hodgens v. General Dynamics Corporation*, 144 F.3d 151, 167 (1st Cir.1998) *see also Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983). Trial courts "should 'use restraint in granting summary judgment' where discriminatory animus is in issue." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) *quoting Valles Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984). "The role of the trial judge at summary judgment state 'is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Hodgens*, 144 F.3d at 167 *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[W]ith a nod to the premise that 'determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury,'" the First Circuit has given the District Courts clear guidance regarding ADEA claims and other discrimination cases. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) *quoting Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 34 (1st Cir.1990). This is particularly true as "proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d. 668 (1973).

The Supreme Court has been equally clear regarding the court's role in weighing evidence and assessing the witness' credibility during summary judgment. The Supreme Court ruled, "[I]t is clear enough from our recent cases that *at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter* but to determine whether there is a genuine issue at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*emphasis added*). The Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*,

530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). *See also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Liberty Lobby, Inc.*, 477 U.S. at 254, 106 S.Ct. 2505; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 *quoting Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

The First Circuit has utilized and built on this by stating:

**[T]he nonmoving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him . . ." The precincts patrolled by Rule 56 admit of *no room for credibility determinations, no room for the measured weighing of conflicting evidence* such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record.**

*Greenburg v. Puerto Rico Maritime Shipping*, 835 F.2d 932, 936 (1st Cir.1987) (*emphasis added*) *quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979).

More succinctly, the First Circuit recently reiterated, *"The court, however, must 'not consider the credibility of the witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence.'"* *Brennan v. GTE Gov. Systems, Corp.*, 150 F.3d 21, 26 (1st Cir.1998) (*emphasis added*) *quoting Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1186 (1st Cir.1996) *see also Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir. 1987) (**"We may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. Rather we must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant."**) (*emphasis added*). Even more simply put, *"No credibility assessment may be resolved in favor of the party seeking summary judgment."* *Woodman v. Haemonetics, Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995) (*emphasis added*).

nied all or part of the conduct that occurred at Polyester's Night Club; however, this does not necessarily raise a contested material fact. Whether or not Plaintiff actually was involved in inappropriate conduct is secondary and immaterial for purposes of a retaliation claim. It is possible that Plaintiff was not involved in elicit behavior but that Defendant made a non-retaliatory and justifiable decision to dismiss based on an investigation. Whether Defendant made a wise or correct employment decision is not the province of the Court as "Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." *Fennell,* 83 F.3d at 537 *quoting Mesnick,* 950 F.2d at 825. What the Court must evaluate is whether there is evidence to establish that the proffered reason for the dismissal was actually a sham, not whether the actual actions took place. To this extent, the scope of the case must be narrowed.

This being the case, the Court identifies at least two specific pieces of evidence which, if credited by the jury, meet Plaintiff's burden. First, Plaintiff was never interviewed nor took part in any investigation regarding the events at Polyester's Night Club. This is unlike the investigation undertaken regarding Colon's dismissal where in Mr. Colon was interviewed as part of the investigations of the events. Furthermore, the reluctance of Defendant V. Suarez to secure Plaintiff's position is evidence of substance which, at trial, could persuade the jury to find that the proffered reason for the dismissal was a pretext. It is plausible that the jury could conclude that Defendant V. Suarez immediately utilized employee reports of impropriety as the pretext to dismiss Plaintiff without fully investigating the events or even interviewing Plaintiff.

Second, the signed statements corroborating the events at the night club were obtained after Plaintiff's dismissal and in preparation of litigation. The Court is cognizant that uncontested deposition transcripts establish that employee incident reports were signed prior to the dismissal; however, in Defendant's summary judgment motion, the full content of these reports is unaddressed. In Defendant's motion for summary judgment, footnote 13 claims that the distinction is inconsequential as the sworn statements include essentially the same information; however, upon review of Plaintiff's attachments to the opposition to summary judgment, it appears that two incident reports (Plaintiff's Opposition, exhibits H & J) (Docket No. 37) were signed on September 2, 1999, the date of Plaintiff's dismissal. Two additional incident reports were signed after September 2, 1999. One was signed on September 3, 1999 (Exhibit F) and another on September 8, 1999 (Exhibit G). This is further evidence which could be given credence by the jury in establishing that V. Suarez' dismissal of Plaintiff for inappropriate behavior was a non-reason or pretext.

The Court cannot weigh this evidence in favor of any party and cannot make any credibility determinations. The jury, as trier of fact, is the proper entity for the determination of Defendant V. Suarez' motive and intent related to Plaintiff's dismissal. The Court is weary of impinging on the province of the jury as there are potential issues of motive and intent present; consequently, the Court finds that Plaintiff has presented sufficient evidence to require the pending Title VII retaliation claim to proceed to trial. The jury, not the Court, must weigh the evidence and make a determination as to Defendant's motive. As explained herein, Plaintiff's

Title VII retaliation claim survives summary judgment.

## V. SEXUAL HARASSMENT UNDER TITLE VII

■ "Sexual harassment is a form of sex discrimination which Title VII prohibits." *See, Acevedo Vargas v. Colon,* 68 F.Supp.2d 80, 87 (D.P.R.1999), citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 436–37 (1st Cir.1997); *Lipsett v. University of P.R.,* 864 F.2d 881, 897 (1st Cir.1988). "Courts have recognized that sexual harassment can take place in two related ways; 'the first, *quid pro quo* harassment, occurs when a supervisor conditions the granting of economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply'." *Acevedo Vargas,* 68 F.Supp.2d at 87, *Lipsett, supra.* The second type of sexual harassment, "hostile work environment, 'occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility towards members of one sex that they alter the conditions of employment for them'." *Id., see also Meritor Savings,* 477 U.S. at 65, 106 S.Ct. 2399.

■ "The EEOC guidelines state that 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual ['quid pro quo'], or (2) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment ['hostile work environment']'." *Id.,* 29 C.F.R. § 1604.119(a) (1999); *see also, Ruiz v. Caribbean Restaurants, Inc.,* 54 F.Supp.2d 97 (D.P.R. 1999). "Sexual harassment allegations must be analyzed in light of the record as a whole and the totality of circumstances; such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Acevedo Vargas,* 68 F.Supp.2d at 87; *Lipsett, supra.*

■ For example, in hostile work environment sexual harassment cases under Title VII, and utilizing the McDonnell Douglas burden-shifting framework, a plaintiff has to demonstrate "that [he or] she was subjected to a hostile work environment, [then, once that is satisfied] [he or] she must establish that the conduct which created the hostile situation should be imputed to the employer." *Acevedo Vargas,* 68 F.Supp.2d at 92; *Meritor,* 477 U.S. at 70–71, 106 S.Ct. 2399; *Kotcher v. Rosa and Sullivan Appliance Ctr. Inc.,* 957 F.2d 59, 63 (2nd Cir.1992); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2nd Cir. 1995).

■ "Hostile work environment sexual harassment occurs when an employer's [or co-worker's] conduct has the purpose or effect of unreasonably interfering with individual's work performance or creating an intimidating, hostile or offensive working environment." *Acevedo Vargas,* 68 F.Supp.2d at 92; *Meritor,* 477 U.S. at 65, 106 S.Ct. 2399; *Tomka v. Seiler Corp.,* 66 F.3d at 1305. "An abusive work environment is created 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficient severe or pervasive to alter the conditions of the victim's employment'." *Acevedo Vargas,* 68 F.Supp.2d at 92; *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295

(1993). "Whether a workplace should be viewed as hostile or abusive—from both a reasonable person's standpoint as well as the victim's subjective perception—can only be determined by considering the totality of the circumstances." *Acevedo Vargas*, 68 F.Supp.2d at 92; *Tomka*, 66 F.3d at 1305 (following *Harris*, 510 U.S. at 23, 114 S.Ct. 367). "These circumstances include: '1) the frequency of the alleged discriminatory conduct; 2) the increasing severity if the alleged discriminatory conduct; 3) whether it is physically threatening or humiliating, or merely offensive, and; 4) whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 24, 114 S.Ct. 367; *Hernandez v. Wangen*, 938 F.Supp. 1052, 1058 (D.P.R.1996). The employee "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations" but in fact constituted discrimination because of sex. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258 (1st Cir.1999). The hostile work environment must exist "because of such individual's ... sex". 42 U.S.C. § 2000e–2(a)(1).

 For sexual harassment claims set forth under the *"quid pro quo"* theory, such a type of harassment "occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors form subordinate, or punishes that subordinate for refusing to comply." *Acevedo Vargas*, 68 F.Supp.2d at 89; *Ruiz v. Caribbean Restaurants Inc.*, 54 F.Supp.2d at 105. To those effects, "[t]he gravamen of a quid pro quo claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal." *Acevedo Vargas*, 68 F.Supp.2d at 89; *Gary v. Long*, 59 F.3d 1391, 1395 (D.C.Cir.1995). "Quid pro quo

harassment exists where a victim's response to unwelcome sexual advances affects tangible aspects of his/her compensation, terms, conditions, or privileges of employment." *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 782 (1st Cir.1990); *Gary*, 59 F.3d at 1396; *Hicks v. Gates Rubber*, 833 F.2d 1406, 1414 (10th Cir. 1987). "In rebuttal, the defendant may show that the behavior complained of either did not take place or that it did not affect a tangible aspect of the plaintiff's employment ...". *Ruiz v. Caribbean Restaurants Inc.*, 54 F.Supp.2d at 105; *Chamberlin v. 101 Realty, Inc.*, 915 F.2d at 783 (quoting *Lipsett*, 864 F.2d at 897); see also, *Acevedo Vargas*, 68 F.Supp.2d at 89–90.

 Of course, an employer is liable to plaintiff under the following circumstances, once plaintiff establishes that either *quid pro quo* or *hostile work environment* sexual harassment took place. In federal law, employer's vicarious liability for sexual harassment by supervisors under Title VII, is governed by the general common law principles of agency. See *Acevedo Vargas*, 68 F.Supp.2d at 87; citing *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). "The Supreme Court in *Burlington* analyzed the central principles of agency law: '[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment'." *Acevedo Vargas*, 68 F.Supp.2d at 87; Section 219(1) of the Restatement. "However, 'the scope of employment does not define the only basis for employer liability under agency principles'." *Id., Burlington Industries Inc.*, 118 S.Ct. at 2267. "The Supreme Court stated that such principles may impose liability on employers even when employees commit torts outside the scope of employment." *Acevedo Vargas*, 68

F.Supp.2d at 87. "Under Section 219(2), which provides exceptions that act to impose employer liability for acts of its employees outside the scope of employment, provides in pertinent part that 'a master is not subject to liability for the torts of his servants acting outside the scope of their employment unless: ... (b) the master was negligent or reckless ...'." *Acevedo Vargas*, 68 F.Supp.2d at 88; Section 219(2)(b). "Accordingly, the Supreme Court held that although sexual harassment is outside the scope of employment, because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is the cause of the harassment." *Id., Burlington Industries Inc.*, 118 S.Ct. at 2273. "That is, an employer is negligent with respect to sexual harassment acts on behalf of its agents or supervisory employees if it knew or should have known about the conduct and failed to stop it". *Burlington Industries Inc.*, 118 S.Ct. at 2273. Thus, "negligence sets that minimum standard for employer liability." *Acevedo Vargas*, 68 F.Supp.2d at 88; *Burlington Industries Inc.*, 118 S.Ct. at 2267.

## VI. APPLICATION OF HOSTILE WORK ENVIRONMENT FRAMEWORK

In the instant case, Plaintiff claims that a hostile work environment was created by salesmen touching each other's buttocks at work, making sexually explicit statements, and culminating in the sexual encounter in the hotel room with Colon. Because Garcia was a manager, and the behavior noted by the Plaintiff was unrelated to the granting of an economic or job related benefit, the Court analyzes Plaintiff's sexual harassment claim under the hostile work environment framework rather than the quid pro quo theory of harassment.

In Plaintiff's deposition, Plaintiff explained that he felt very uncomfortable at work due to the way that people talked and behaved on a daily basis. Garcia Deposition p. 150–151. Plaintiff stated that male employees grabbed each others buttocks and talked about girls they were out with, the female's appearances, and what they did with females. *Id.* Plaintiff then posits that this atmosphere spilled over into the hotel incident with Colon. Furthermore, Plaintiff fails to identify Colon as one of the employees involved in the conduct in Puerto Rico.

The Court is unconvinced that the atmosphere at the work place is related to the sexual encounter that occurred with Colon in Garcia's hotel room in Washington D.C. It is more proper to view the incidents separately. The hotel encounter involved one employee removing his penis and attempting to obtain oral sex from Plaintiff. This is a far cry from statements regarding how attractive a female may be.

Viewed separately, the Court first must determine whether the employer, V. Suarez, should be held liable for Colon's actions taking place in the hotel room. When Plaintiff returned from the trip, he promptly reported the incident and Defendant V. Suarez took swift action, forcing Colon into early retirement. Because Defendant V. Suarez took prompt action in response to the sexual encounter with Colon, the facts presented by Plaintiff cannot support the claim that V. Suarez acted negligently and failed to implement an appropriate corrective action. *See White v. New Hampshire Department of Corrections*, 221 F.3d 254, 261 (1st Cir.2000). As a result, V. Suarez cannot be held liable under Title VII for Colon's actions in Plaintiff's hotel room.

This alone does not preclude the possibility of a hostile work environment in

the workplace revolving around inappropriate statements and actions of V. Suarez employees. They must be analyzed separately. Plaintiff admits that he filed no report of the prior behavior he found harassing. Plaintiff makes no allegations that he was ever grabbed or that any comments were ever made about him personally. Furthermore, Plaintiff never reported this conduct to any supervisor. Plaintiff explained that in conversations with other employees, they commented that it was normal and part of the business.

The Court's main concern is that the behavior complained of (apart from the hotel encounter) does not display any discrimination based on sex. It does not appear that Plaintiff was exposed to any disadvantageous condition of employment which a female co-worker would not be exposed. Plaintiff was not subjected to a work environment which a female co-worker would not be subjected to. Statements were not made regarding Plaintiff and Plaintiff was never involved in any inappropriate touching prior to the hotel encounter. A female co-worker with an office next to Plaintiff would experience the same work environment as Plaintiff. That environment may be inappropriate and explicit; however, the environment is not discriminatory against Plaintiff because he is male.

> We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issues, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Because Plaintiff experienced a work environment identical to other female employees, the Court can only conclude that the actions of the V. Suarez employees were not discriminatory and fail to substantiate a Title VII hostile work environment claim.

Furthermore, the Court finds the conduct complained of, prior to the hotel encounter, to be insufficiently severe or pervasive to establish an abusive work environment. On this point, the Court notes that no specific act was ever made in direct relation to Plaintiff. The actions Plaintiff identified all relate to other employees or third parties. While the environment may have been sexually charged, no evidence exists that a severe or pervasive environment existed. This is further supported by the fact that Plaintiff failed to specifically identify any one incident and Plaintiff failed to report any incidents to his supervisors. Even assuming arguendo that the conduct in question was severe and constituted discrimination due to sex, the liability of Defendant V. Suarez is lacking as Plaintiff presents no evidence that Defendant V. Suarez knew or should have known of this environment. Merely stating that is was ongoing will not suffice.

Because the Court finds that Defendant V. Suarez acted promptly in dealing with Colon's hotel encounter, no other conduct was severe enough to create an abusive work environment, and the conduct described by Plaintiff is not discriminatory because of sex, Plaintiff's Title VII claim for a hostile work environment is dismissed.

**VII. 29 P.R. Laws Ann. § 155 et seq. and 31 P.R. Laws Ann. § 5141**

As Defendant notes, Law 17, 29 P.R. Laws Ann. § 155 et seq. conforms to the Title VII requirements for sexual harassment and hostile work environments. *See Afanador Irizarry v. Roger Electric Co., Inc.,* 2002 T.S.P.R. 56, 2002 WL 857782, 2002 PR Sup. Lexis 54 (2002). Plaintiff's opposition to the motion for summary judgment does not contest this fact and further states that the remaining Article 1802, 31 P.R. Laws Ann. § 5141 claim of Plaintiff Martinez is contingent on the Title VII and/or Law 17 claim. This Court, having dismissed Plaintiff Garcia's Title VII hostile work environment claims due to the fact that no prima facie sexual discrimination existed, must necessarily dismiss the remaining sexual harassment/hostile work environment claim under Local Law 17. Plaintiff's Martinez' claim under Article 1802 remains in conjunction with Plaintiff Garcia's Title VII retaliation claim.

**VIII. CONCLUSION**

The Court concludes that Plaintiff Garcia has produced sufficient evidence for a jury to determine whether Defendant V. Suarez' legitimate non-discriminatory basis for Plaintiff's dismissal was a pretext or sham and motivated by retaliatory animus. As a result, Plaintiff Garcia's Title VII retaliation claim and Plaintiff Martinez' contingent claim for damages under Article 1802 remain. The Court further concludes that Defendant V. Suarez took swift and appropriate action in regards to the Colon hotel encounter and that Plaintiff Garcia failed to support a claim of hostile work environment which would substantiate discrimination based on sex. Defendant V. Suarez' Motion for Summary Judgment (Docket No. 30) is **GRANTED IN PART** and **DENIED IN PART** as explained above. The Court sets a Pre-Trial Conference for **October 29, 2003 at 4:30 p.m.**

**IT IS SO ORDERED.**